NORTHWEST AIRLINES, INC.; North-
west Airlines, Inc., Pilots' Pension
Plan; and State Street Bank and Trust
Company, Plaintiffs,

v.

Arthur ROEMER, in his official capacity
as Commissioner, Minnesota Depart-
ment of Revenue; and Steven A. Felak,
Jr., Defendants.

Civ. No. 4–83–662.

United States District Court,
D. Minnesota,
Fourth Division.

March 15, 1984.

Edward J. Pluimer, and Joseph M. Musi-
lek, Dorsey & Whitney, Minneapolis, Minn.,
for plaintiffs.

Neil F. Scott, Sp. Asst. Atty. Gen., Reve-
nue Div., St. Paul, Minn., Steven Felak, pro
se, for defendants.

DIANA E. MURPHY, District Judge.

Plaintiffs Northwest Airlines, Inc.
(NWA), Northwest Airlines, Inc., Pilots'
Pension Plan, and State Street Bank and
Trust Company (State Street Bank) have
filed a complaint for interpleader and de-
claratory judgment. Plaintiffs also seek
an award of their costs and attorneys' fees.
Jurisdiction is invoked pursuant to 28
U.S.C. §§ 1332(a)(2) and 1335. The matter
is now before the court upon cross motions
for summary judgment filed by plaintiffs
and defendant Arthur Roemer.

*Background*

Plaintiffs and defendant Roemer have
submitted a signed stipulation of facts. A
request for admissions, containing the iden-
tical facts set forth in the stipulation, was
served upon defendant Steven A. Felak, Jr.
He neither objected to nor denied any of
the Requests for Admissions, and the mat-
ters are therefore deemed admitted. Fed.
R.Civ.P. 36(a). The facts set forth below
are based on the stipulation and request
for admissions.

NWA is a Minnesota corporation with its
principal place of business in St. Paul, Min-
nesota. The Pilots' Pension Plan is a quali-
fied employee pension plan subject to fed-
eral regulation under the Employment Re-
tirement Security Act of 1974 (ERISA), as
codified at 29 U.S.C. § 1001 *et seq.* and
subject to the tax laws of the United States
as codified at 26 U.S.C. § 401 *et seq.* NWA
is the Plan Administrator for the Pilots'
Pension Plan, while State Street Bank is
the Trustee.

Defendant Roemer is a resident of the
State of Minnesota and is the Commission-
er of the Minnesota Department of Reve-
nue (MDR), an agency of the State of Min-
nesota. Defendant Felak is a retired pilot
of NWA and a participant in the Pilots'

Pension Plan. Felak is presently a resident of the State of Washington.

Felak retired as a pilot for NWA in the Spring of 1983. Based upon his past earnings as a pilot for NWA, Felak is entitled to receive a monthly employee pension from the Pilots' Pension Plan in the amount of $5,205.17. The payment is to be made by the State Street Bank as Trustee at the direction of NWA as Plan Administrator. The first payment was sent to Felak at his residence on May 31, 1983.

A tax assessment has been made against Felak by Roemer in his official capacity for $128,719.19. Roemer asserts that Felak owes this amount for unpaid Minnesota state income taxes, interest and penalties. A default judgment was entered in the District Court of the State of Minnesota against Felak in favor of the MDR for this amount on May 24, 1983. The Commissioner and the MDR are vested with authority pursuant to Minn.Stat. § 290.92, subd. 23 to administer the collection of delinquent Minnesota state income taxes.[1]

On or about April 1, 1983, after Felak had retired as a pilot for NWA and had begun accruing his monthly pension benefit, NWA and State Street Bank received a Notice to Employer from the MDR, pursuant to Minn.Stat. § 290.92, subd. 23. The notice demanded that NWA and State Street Bank withhold from the monthly pension payment to Felak one quarter of the total pension payment, or $1,301.29 each month. The notice directed NWA and State Street Bank to remit the withheld monies to the MDR in partial payment of the $128,719.19 allegedly owed by Felak. The notice further stated that if plaintiffs willfully failed to comply with the requirements set forth in the Notice, they themselves would be liable for the amount demanded plus accrued interest.

At the hearing on this matter and in a letter sent by Felak to M.J. Lapensky, Chairman and Chief Executive Officer of Northwest, Felak denied owing any Minnesota state income taxes and claimed that he is entitled to the full amount of the monthly pension benefit. Under the terms of the Pilots' Pension Plan, he is to continue receiving his monthly pension payment for the duration of his life.

At the outset of this case plaintiffs obtained an order from this court, dated July 26, 1983, permitting them to deposit $1,301.29 into the registry of the court for the month of June, and an equal amount for each subsequent month, pending a final

---

1. Minn.Stat. § 290.92, subd. 23, provides in pertinent part as follows:

Subd. 23. Withholding by employer of delinquent taxes. (1) The commissioner may, within five years after the taxes should have been paid or the return is filed, whichever is later, give notice to any employer, deriving income which has a taxable status in this state regardless of whether the income is exempt from taxation, that an employee of that employer is delinquent in a certain amount with respect to any state taxes, including penalties, interest and costs. The Commissioner can proceed under this subdivision only if the tax is uncontested or if the time for appeal of the tax has expired. The Commissioner shall not proceed under this subdivision until the expiration of 30 days after mailing to the taxpayer, at his last known address, a written notice of (a) the amount of taxes, interest and penalties due from the taxpayer and demand for their payment and (b) the Commissioner's intention to require additional withholding by the taxpayer's employer pursuant to this subdivision. The effect of the notice shall expire 180 days after it has been mailed to the tax-

payer provided that the notice may be renewed by mailing a new notice which is in accordance with this subdivision. The renewed notice shall have the effect of reinstating the priority of the original claim. The notice to the taxpayer shall be in substantially the same form as that provided in section 571.41. The notice shall further inform the taxpayer of the wage exemptions contained in section 550.37, subdivision 14. If no statement of exemption is received by the Commissioner within 30 days from the mailing of the notice, he may proceed under this subdivision. The notice to the taxpayer's employer may be served by mail or by delivery by an employee of the department of revenue and shall be in substantially the same form as provided in section 571.495. Upon receipt of notice, the employer shall withhold from compensation due or to become due to the employee, the total amount shown by the notice, subject to the provisions of section 571.55. The employer shall continue to withhold each pay period until the amount shown by the notice is paid in full.

judgment. This represents the amount claimed by the MDR. The funds on deposit are thus subject to conflicting claims of Felak and the MDR.

Plaintiffs and defendant Roemer have filed motions for summary judgment.[2] Plaintiffs seek an order declaring that ERISA preempts the MDR's efforts to levy on Felak's monthly pension benefit. Plaintiffs further move the court for an order, pursuant to 28 U.S.C. § 1335, directing that the money deposited into the registry of the court be delivered to defendant Felak. They also seek to be discharged from all liability to defendants relating to past pension payments. Defendant Roemer seeks an order requiring the plaintiffs to comply with the Notice to Employer of additional withholding tax served on or about April 1, 1983 and ordering that the funds deposited in the registry of the court be paid to him.

*Discussion*

The focal issue to be resolved is whether ERISA preempts the authority of Roemer to levy upon an ERISA-covered employee pension plan, pursuant to Minn.Stat. § 290.92, subd. 23, to satisfy the state income tax liability of one of the plan's participants.

Preemption is a question of Congressional intent. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 2899, 77 L.Ed.2d 490 (1983). "Preemption may be either express or implied, and 'is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and

purpose'...." *Id.* (citations omitted). The starting point for the analysis is the language of the statute itself. *Greyhound Corp. v. Mount Hood Stages, Inc.*, 437 U.S. 322, 98 S.Ct. 2370, 57 L.Ed.2d 239 (1978).

The two relevant provisions of ERISA are 29 U.S.C. §§ 1056(d) and 1144(a). Section 1056(d) requires that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated."[3] 29 U.S.C. § 1056(d). Section 1144(a) provides that ERISA "supercede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan ...." 29 U.S.C. § 1144(a).

*A. Section 1056(d)*

Defendant Roemer argues that § 1056(d) specifically addresses only voluntary transfers of beneficial rights and does not expressly prohibit the enforcement of judgments against a pensioner's benefits by levy, garnishment, or attachment. He contends ERISA is thus different from other Congressional acts where benefits are exempted from execution or levy in explicit terms. *See* 42 U.S.C. § 407 (Social Security benefits); 45 U.S.C. § 231m (Railroad Retirement benefits); 38 U.S.C. § 3101(a) (Veteran's benefits). Roemer argues that the intent of § 1056(d) is merely to prevent employees and families from bargaining away pension benefits.

The only available legislative history on § 1056 is an interpretive comment by the Joint House and Senate Conference Committee which states in part:

It appears that Felak challenges the right of the MDR to levy taxes on his income rather than the jurisdiction of this court.

---

**2.** Defendant Felak has submitted a number of documents, some of which mention jurisdiction, but he has not filed any type of motion. At the hearing Felak was given an opportunity to present his views. He stated:

I'm just here to challenge the jurisdiction, not within the bar.... I am an unenfranchised sovereign, American, a free man. I come under the Constitution and statute law. I don't come under the MDR or the IRS because that's a special privilege tax; and wages, salaries, and first commissions are not taxable ... MDR has no jurisdiction over me, and that's it. And the burden of proof is upon them to prove that they have have jurisdiction over me.

**3.** Section 1056(d) further provides that "[f]or purposes ... of this subsection, there shall not be taken into account any voluntary and revocable assignment of not to exceed 10 percent of any benefit payment."

A provision almost identical to § 1056(d)(1) is found in the companion tax provisions to ERISA in the Internal Revenue Code wherein assignment or alienation of benefits is also prohibited if a pension plan is to be qualified for special tax benefits under the statute. 26 U.S.C. § 401(a)(13).

Under the conference substitute, a plan must provide that benefits under the plan may not be assigned or alienated. However, the plan may provide that after a benefit is in pay status, there may be a voluntary revocable assignment (not to exceed 10 percent of any benefit payment) by an employee which is not for purposes of defraying the administrative costs of the plan. For purposes of this rule, a garnishment or levy is not to be considered a voluntary assignment.

House Conference Rep. 93–1280, 93d Congress, 2d Session, U.S.Code Cong. & Admin.News, 1974 pp. 4639, 5061. This comment, as well as the language of the statute, indicate that Congress intended the prohibition against assignments to include both voluntary and involuntary assignments. The general prohibition against assignments stated in the first sentence of the statutory provision contains no qualification. By contrast, references to voluntary assignments in both the statute and the Conference Committee's comment are explicit. The final sentence of the comment clearly indicates that Congress intended to distinguish between the general prohibition, which includes garnishments and levies, and the limited exception for voluntary transfers of 10% or less. *See Commercial Mortgage Insurance Inc. v. Citizens National Bank of Dallas*, 526 F.Supp. 510 (N.D.Tex.1981); *cf. General Motors Corporation v. Buha*, 623 F.2d 455 (6th Cir.1980) (legislative history inconclusive).

**4.** 26 C.F.R. § 1.401(a)–(13)(b)(2) provides as follows:

A plan provision satisfying the requirements of subparagraph (1) of this paragraph shall not preclude the following:
(i) The enforcement of a Federal tax levy made pursuant to section 6331.
(ii) The collection by the United States on a judgment resulting from an unpaid tax assessment.

**5.** The regulations do, however, contain a provision which excludes from the prohibition against assignment any "arrangement for the withholding of Federal, State or local tax from any benefit payments." 26 C.F.R. § 1.401(a)–(13)(c)(2)(ii). Defendant Roemer cites this provision in support of his contention that state tax levies are not prohibited by ERISA. However,

The Internal Revenue Service has adopted regulations which are consistent with this interpretation. The regulations provide, in part, as follows:

(b) No assignment or alienation—(1) General Rule. Under section 401(a)(13) a trust will not be qualified unless the plan of which the trust is part provides that benefits provided under the plan may not be anticipated, assigned (either at law or in equity), alienated or subject to attachment, garnishment, levy, execution or other legal or equitable process.

26 C.F.R. § 1.401(a)–(13)(b)(1). Significantly, these regulations provide an exception for levies in aid of federal tax collection. 26 C.F.R. § 1.401(a)–(13)(b)(2).[4] There is no comparable provision for state tax levies.[5]

The Internal Revenue Service is jointly charged with the Department of Labor with administering ERISA. *See General Motors Corp. v. Buha*, 623 F.2d 455, 461 (6th Cir.1980); *Commercial Mortgage Insurance, Inc. v. Citizens National Bank*, 526 F.Supp. 510, 519 (N.D.Tex.1981). The regulation prohibiting assignments and alienation must be followed "unless it was issued in excess of the statutory authority of the Secretary or was 'arbitrary, capricious, or an abuse of discretion or otherwise not in accordance with law'...." *General Motors Corp.*, 623 F.2d at 462–63 (citations omitted). This regulation was well within the statutory authority of the secretary.

the regulations clearly draw a distinction between "tax levies" and "arrangements for withholding." Otherwise the provision specifically permitting federal tax levies would be superfluous. This provision was apparently enacted to comply with 26 U.S.C. § 3402(*o*)(1)(B) (1978 Supp) which permitted an individual to request to have a portion of his pension withheld for payment of federal income tax. Congress subsequently enacted 26 U.S.C. § 3405 which requires that federal income taxes be withheld unless the pensioner elects to waive the withholding requirement. The provision permitting an arrangement for withholding taxes, as well as the other arrangements listed in § 1.401(a)–(13)(c)(2), are clearly designed to be consensual in nature.

The court's reading of the statute and supporting regulations finds support in a number of decisions which have addressed the issue of whether ERISA benefits are subject to garnishment by creditors. Courts have consistently held that a non-family third party creditor may not garnish benefits derived from a pension plan which is governed by ERISA. *See, e.g., Tenneco Inc. v. First Virginia Bank of Tidewater*, 698 F.2d 688, 689–90 (4th Cir.1983); *General Motors Corp. v. Buha*, 623 F.2d 455, 462 (6th Cir.1980); *Commercial Mortgage Insurance Inc. v. Citizens National Bank of Dallas*, 526 F.Supp. 510, 520 (N.D.Tex. 1981); *Helmsley-Spear, Inc. v. Winter*, 426 N.Y.S.2d 778, 74 A.D.2d 195, 199 (1980), *aff'd* 52 N.Y.2d 984, 438 N.Y.S.2d 79, 419 N.E.2d 1078 (1981); *Christ Hospital v. Greenwald*, 82 Ill.App.3d 1024, 38 Ill.Dec. 469, 403 N.E.2d 700 (1980); *Ward v. Ward*, 164 N.J.Super. 354, 396 A.2d 365 (1978).[6]

The only judicial exception to the general rule against garnishment appears to be where a debt is owed to an employee's spouse. Under these circumstances courts have permitted garnishment of the employer's interest in the plan. *See e.g., American Telephone & Telegraph v. Merry*, 592 F.2d 118 (2nd Cir.1979); *Senco of Florida, Inc. v. Clark*, 473 F.Supp. 902 (M.D.Fla. 1979); *Cartledge v. Miller*, 457 F.Supp. 1146 (S.D.N.Y.1978); *Stone v. Stone*, 450 F.Supp. 919 (N.D.Cal.1978); *Knapp v. Johnson*, 301 N.W.2d 548 (Minn.1980). Courts have interpreted this exception narrowly. "The exception is premised upon the statute's broad purpose to provide protection for employees and their families, so that intra-familial transfers are not to be viewed in the same light as an involuntary transfer for the benefit of a third-party creditor." *Tenneco Inc. v. First Virginia*

*Bank of Tidewater*, 698 F.2d 688, 690 (4th Cir.1983).

The general prohibition against assignments contained in § 1056(d), therefore, as well as provisions in the tax code and regulations, implicitly indicate Congress' intention to preempt Roemer's authority to levy upon an ERISA-covered employee pension plan to satisfy the state income tax liability of one of the plan's participants.

### B. Section 1144(a)

Roemer argues for a narrow construction of § 1144(a) which provides that ERISA "supercede(s) any and all state laws insofar as they ... relate to any employee benefit plan ...." He contends that state law "relates to" an employee benefit plan only if it regulates the terms and conditions of a pension plan. Because Minn. Stat. § 290.02, subd. 23 is a law of general application which seeks only to secure payment of delinquent taxes, Roemer argues that it does not fall into the category of state laws which are superceded by § 1144(a).

The narrow reading of § 1144(a) proposed by Roemer, however, has been rejected by the Supreme Court. In *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981), the Court was confronted with a New Jersey law which prohibited worker compensation benefits from being used to offset pension benefits. Despite the fact that the law had only a collateral effect on pension plans, the court unanimously held that the provision was preempted by ERISA. *Alessi*, 451 U.S. at 524–526, 101 S.Ct. at 1906–1908. "ERISA makes clear that even indirect state action bearing on private pensions

---

**6.** Roemer cites a New York State Appellate Division case which held that ERISA did not exempt pension benefits from New York statutory procedures governing enforcement of money judgments by a judgment creditor. *National Bank of North America v. International Brotherhood of Electrical Workers Local #3*, 419 N.Y.S.2d 127, 69 A.D.2d 679, *appeal dismissed*, 48 N.Y.2d 752, 422 N.Y.S.2d 666, 397 N.E.2d 1333 (1979). The appeal in that case was dismissed after the

judgment debtor discharged his debt. Moreover, another panel of the New York Appellate Division, in a subsequent decision that was affirmed by the New York Court of Appeals, held that ERISA did in fact preempt New York's statutory procedure governing enforcement of money judgments. *Helmsley-Spear, Inc. v. Winter*, 426 N.Y.S.2d 778, 74 A.D.2d 195, 199 (1980), *aff'd* 52 N.Y.2d 984, 438 N.Y.S.2d 79, 419 N.E.2d 1078 (1981).

may encroach upon the area of exclusive federal concern." *Id.* at 525, 101 S.Ct. at 1907.

Similarly, in *Shaw v. Delta Airlines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), the Court unanimously held that ERISA preempted a New York Human Rights law which had been interpreted to require welfare benefit plans to afford its participants disability benefits when they became disabled by pregnancy. The Court had no difficulty concluding that the Human rights law "related to" employee benefit plans. The Court carefully reviewed the legislative history of ERISA and concluded that Congress intended the words "relate to" in § 1144(a) to be used in their "broad sense." *Shaw,* 103 S.Ct. at 2900–01.[7]

The contention that the ERISA preemption should be narrowly construed is also undermined by Congress' specific identification of areas of state legislation that were not preempted. State laws regulating insurance, banking, or securities, as well as generally applicable criminal laws, are specifically exempted from the preemption provision. 29 U.S.C. §§ 1144(b)(2) and (4). When ERISA was originally considered, Congress rejected a request by the Secretaries of Labor and Treasury to exempt state taxation from the preemption provision.[8] In 1983, when ERISA's preemption language was amended to exclude Hawaii's experimental health benefit statute from § 1144(a), Congress specifically endorsed the preemption of state tax laws.[9] The language of § 1144(a) and the legislative history indicate, therefore, that Congress intended to preempt state tax laws insofar as they relate to employee benefit plans.[10] *National Carriers' Conference*

7. The Court's review of the legislative history indicated the following:

> The bill that became ERISA originally contained a limited preemption clause, applicable only to state laws relating to the specific subjects covered by ERISA. The Conference Committee rejected these provisions in favor of the present language, and indicated that the section's preemptive scope was as broad as its language .... Statements by the bill's sponsors during the subsequent debates stressed the breadth of federal preemption.

> *Shaw,* 103 S.Ct. at 2900–01 (citations and footnotes omitted).

8. The Secretaries of Labor and Treasury jointly suggested a revised preemption provision which read in part:

> Notwithstanding the provisions of this section, a state shall have the authority to prescribe rules and regulations governing the tax qualification and taxation of contributions, distributions or income, of an employee pension plan (including a trust forming a part of such plan) as defined in the Welfare and Pension Plan Disclosure Act.

> Administration Recommendations to the House and Senate Conferees on H.R. 2 to Provide for Pension Reform (April, 1974), reprinted in 3 Legislative History 5050, 5147.

9. That amendment, Section 302 of Pub.L. No. 94–473, 96 Stat. 2611, signed on January 14, 1983, provides in pertinent part:

> (a) EXEMPTION FROM PREEMPTION.— Section 514(b) of Employee Retirement Income Security Act of 1974 (29 U.S.C. 1144(b)) is amended by adding at the end thereof the following new paragraph:

> "(5)(A) Except as provided in subparagraph (B), subsection (a) shall not apply to the Hawaii Prepaid Health Care Act (Haw.Rev.Stat. §§ 393–1 through 393–51).

> (B): *Nothing in subparagraph (A) shall be construed to exempt from subsection (a)—*
> (i) *any State tax law relating to employee benefit plans* ... (emphasis added).

> The Conference Report explained as follows: "The provision generally exempts the Hawaii Prepaid Health Care Act from preemption by ERISA. Under the provision, however, preemption is continued with respect to ... any State Tax law relating to employee benefit plans ...." H.R.Rep. No. 97–984, 97th Cong., 2d Sess. 18 (1982), U.S.Code Cong. & Admin.News 1982, pp. 4580, 4603.

10. This conclusion is also consistent with that reached by the Ninth Circuit in *Franchise Tax Board of California v. Construction Laborers Vacation Trust,* 679 F.2d 1307 (9th Cir.1982), *vacated,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), in which the court held that the State of California could not levy upon vacation funds for tax collection. 679 F.2d 1309.

The Vacation Trust relied on an ERISA Advisory Opinion from the Department of Labor which concluded "that the process of any state judicial or administrative agency seeking to levy for unpaid taxes ... upon benefits due a participant or beneficiary under the plan is preempted under ERISA Section 514." While the Supreme Court vacated the decision on appeal, holding that the case had been improperly removed to federal court and that the district court was without federal jurisdiction, the Court noted in dicta that "the Court of Appeals may well be

*Committee v. Heffernan,* 454 F.Supp. 914 (D.Conn.1978).

## ORDER

Accordingly, based on the above and all the files, records, and proceedings herein,

IT IS HEREBY ORDERED that:

1. Plaintiffs' motion for summary judgment is granted.

2. Defendant Roemer's motion for summary judgment is denied.

3. The court hereby declares and adjudges that ERISA preempts the application of Minn.Stat. § 290.02, subd. 23, and that defendant Arthur Roemer, in his official capacity as Commissioner, Department of Revenue, cannot demand that plaintiffs, or any of them, withhold and/or remit funds to said Department which are payable out of the assets of Northwest Airlines, Inc., Pilots' Pension Plan to defendant Steven A. Felak, Jr., a participant in the Pilots' Pension Plan.

4. The funds deposited in the registry of the court by plaintiffs shall be paid by the Clerk of Court to defendant Steven A. Felak, Jr.

5. Plaintiffs are hereby discharged from all liability to defendants relating to the funds deposited into the registry of the court, past pension payments, and the Notice to Employer from the Minnesota Department of Revenue.

6. Any claim for attorneys fees must be brought in accordance with Local Rule 4(D).

LET JUDGMENT BE ENTERED ACCORDINGLY.

correct that ERISA precludes enforcement of the State's levy in the circumstances of this case

...." 103 S.Ct. at 2855.