ELLIS NATIONAL BANK OF JACK-
SONVILLE, Plaintiff-Appellee,

v.

IRVING TRUST COMPANY, Defendant,

Bache Group, Inc. and Sam Kalil, Jr.,
Additional Defendants on
Counterclaim,

Bache Group, Inc., Additional Defendant
on Counterclaim-Appellant.

No. 68, Docket 85-7319.

United States Court of Appeals,
Second Circuit.

Argued Sept. 4, 1985.  Decided
March 19, 1986.

Thomas A. Butler, New York City (But-
ler, Fitzgerald & Potter, of counsel), for
additional defendant on counterclaim-appel-
lant.

Mitchell A. Lowenthal, New York City
(George Weisz, Joanne Zack, Loretta K.
Davis, Cleary, Gottlieb, Steen & Hamilton,
of counsel), for plaintiff-appellee.

Before PIERCE and PRATT, Circuit
Judges, and WARD, District Judge.*

PIERCE, Circuit Judge:

Appeal from an order of the United
States District Court for the Southern Dis-
trict of New York, Richard Owen, *Judge*,
granting Ellis National Bank's motion for

* Honorable Robert J. Ward, United States Dis-
trict Judge for the Southern District of New

York, sitting by designation.

summary judgment, denying Bache Group, Inc.'s motion for leave to amend its cross-claims, and directing Irving Trust Co., as depositary, to disburse to Ellis certain pension plan funds held by Irving Trust and subject to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*

Appellant Bache Group, Inc. ("Bache"), a pension plan, argues principally that it is entitled to reclaim certain funds held by Irving Trust Company ("Irving Trust") for Sam Kalil, Jr. ("Kalil"), a former officer of Prudential-Bache Securities, Inc. ("Prudential-Bache"), a member of Bache, because those funds are subject to the imposition of a constructive trust under which Bache might trace and reclaim funds stolen by Kalil. Appellee Ellis National Bank of Jacksonville ("Ellis") contests Bache's asserted entitlement and seeks affirmance of the district court's grant of summary judgment in its favor on the basis of an assignment of the pension funds by Kalil to Ellis.

We agree with the district court's determination that the funds at issue are pension benefits subject to ERISA's provision against alienation and are not subject to the imposition of a constructive trust for Bache's benefit. We therefore affirm the order of the district court.

## BACKGROUND

Sam Kalil, Jr. ("Kalil"), an employee of Bache & Company since June 3, 1974 and later an officer of its successor company, Prudential-Bache, elected to participate in the Bache Group, Inc. Employees Savings Plan in January 1980 and in the Bache Group, Inc. Employees Supplemental Retirement Plan in January 1983. At the commencement of this action, the trustee for these plans (collectively referred to as "the Plans"), Irving Trust Co. ("Irving Trust"), held in trust for Kalil $144,538.61 under the Savings Plan and over $33,000 under the Supplemental Plan. Prudential-Bache had directly deposited all of these funds into the Plans for Kalil's benefit. It is undisputed that Kalil's interest in the Plans is fully vested.

On December 19, 1983 and March 9, 1984, two summary judgments, totaling $210,430.46 plus interest, were entered in a Florida state court against Kalil in favor of the Jacksonville National Bank, predecessor to the Ellis National Bank of Jacksonville ("Ellis"). To satisfy these judgments, Kalil executed an Assignment and Agreement ("Assignment") on or about March 1, 1984 whereby he revocably assigned and transferred to Ellis all of his right, title and interest to the trust funds in the plans. Simultaneously, Kalil directed Irving Trust in writing to disburse these funds to Ellis under the terms of the plans. On or about March 26, 1984, by a separate letter to Irving Trust, Ellis requested such disbursements.

On January 15, 1985, Kalil, having been indicted in state court in Florida, pleaded *nolo contendere* to eight counts of grand theft and securities fraud in connection with unauthorized transactions in Bache's customer's accounts. At his sentencing hearing, Kalil stated under oath that both he and Prudential-Bache had received commissions on all of his trades, both authorized and unauthorized. Kalil was sentenced to serve twenty-six months in prison and ten years on probation; he was also directed to pay various fines and make restitution to defrauded customers.

On May 24, 1984, Ellis brought an action in the United States District Court for the Southern District of New York against Irving Trust for disbursement of Kalil's funds as Kalil's assignee. Irving Trust disclaimed any interest in the funds and responded as Interpleader Counterclaimant against Ellis and additional defendants Bache and Kalil. On September 26, 1984, the district judge entered an amended order providing that the funds would remain with Irving Trust *pendente lite*, but would be deemed to have been deposited with the court under the Federal Interpleader Statute, 28 U.S.C. § 1335.

In his answer to Irving Trust's counterclaim, Kalil requested that the funds be disbursed to Ellis. In their responses, Bache and Ellis cross-claimed against each

other and Kalil. Ellis claimed that Bache had no interest or right to the funds, and that it (Ellis) was entitled thereto as Kalil's assignee. Bache claimed that Kalil had converted funds of Prudential-Bache customers, which funds were subsequently deposited into the Plans. Bache further claimed that, having paid over three million dollars to unnamed customers who sustained losses due to Kalil's conversions, it was subrogated to the claims of those customers against Kalil for the return of the converted funds.

Ellis moved for summary judgment, claiming that Bache had no interest in the funds, that Kalil had never directly deposited the funds into the Plans, that Bache had controlled all such deposits, and that Ellis was thus entitled to immediate disbursement as assignee. Bache moved for leave to file amended cross-claims asserting that it had an "interest in and right to" funds contributed by Kalil to the Plans because certain of these funds "included commissions paid on fraudulent securities transactions."

By order dated April 2, 1985, the district court granted Ellis's motion for summary judgment and denied leave to Bache to file amended cross-claims. The cause was subsequently certified for appeal pursuant to Fed.R.Civ.P. 54(b).

## DISCUSSION

Kalil's assignment to Ellis was "revocable" and therefore apparently satisfies applicable federal law regarding an employee's assignment of his own pension benefit to third parties.[1] However, Bache claims that it may alienate certain purportedly assigned benefits under an allegedly implied exception to ERISA's provision against assignment and alienation, 29 U.S.C. § 1056(d). The central question in this case is whether the anti-alienation provision of ERISA prohibits an employer from reclaiming certain funds contributed to an employee's pension plans while the employer was unaware that those funds represented monies derived from fraudulent practices for which the employee was subsequently indicted and convicted and for which the employer effectively became liable to defrauded customers.[2] Procedurally, the question is whether Bache has presented a triable issue in seeking to impose a constructive trust upon those funds in Kalil's accounts in the Plans that are traceable to the commissions which Kalil generated based on fraudulent securities

---

1. Treas.Reg. § 1.401(a)–13(e) expressly permits a participant in a pension plan to direct the plan to pay all or part of plan benefits to a third party if (1) such arrangement is revocable at any time by the participant and (2) the third party files a written acknowledgment of such revocability with the plan administrator. The parties do not contend on appeal, and no party (including Irving Trust) has argued to the district court, that Kalil's revocable assignment to Ellis failed to satisfy these requirements.

2. Counsel do not contest, and we see no reason to question, the status of the funds at issue as pension plan funds under ERISA. Both of the Plans are qualified trusts under Treasury Regulation 1.401(a)–13(b)(1), 26 C.F.R. § 1.401(a)–13(b)(1), promulgated pursuant to Section 401(a)(13) of the Internal Revenue Code, 26 U.S.C. § 401(a)(13) and Section 206(d)(1) of ERISA, 29 U.S.C. § 1056(d)(1). That Regulation provides that "a trust will not be qualified unless the plan of which the trust is a part provides that benefits provided under the plan may not be anticipated, assigned (either at law or in equity), alienated or subject to attachment, garnishment, levy, execution or other legal or equitable process."

We are not persuaded by Bache's argument that the funds lost any protection against alienation under ERISA because the Trustee paid the funds into the District Court and Kalil abandoned any claim to the funds. As to the Trustee's actions, we note that the district court amended its order of July 9, 1984, that the funds be paid into the district court under the Federal Interpleader Statute, 28 U.S.C. § 1335, when it ordered on September 5, 1984 that the Trustee retain the funds and that the funds be *deemed* to have been transferred under that statute. Further, we doubt that such payment, even if it did occur, would sacrifice ERISA protections since it would have been made pursuant to a court order and thus is distinguishable from *Tenneco, Inc. v. First Virginia Bank*, 698 F.2d 688, 691 (4th Cir.1983) (plan member withdraws funds and delivers to broker). Nor do we think that Kalil has abandoned any claim to the funds; on the contrary, Kalil seeks to protect a revocable assignment of the funds in satisfaction of a judgment debt.

transactions.[3] We note that the cases on point are divided. *Compare Vink v. SHV North American Holding Corp.*, 549 F.Supp. 268 (S.D.N.Y.1982) (ERISA precludes denial of benefits despite criminal behavior) *with St. Paul Fire and Marine Ins. Co. v. Cox*, 752 F.2d 550, 552 (11th Cir.1985) (per curiam) ("There is no reason to conclude that ERISA requires the abrogation of the equitable principle that a wrongdoer should not benefit from his misdeeds.").

Bache argues that it is entitled to the imposition of a constructive trust on the funds, stolen by Kalil and traceable into the Plans, under state common law principles of equity, *see, e.g., Beatty v. Guggenheim Exploration Co.*, 225 N.Y. 380, 122 N.E. 378 (1919) (Cardozo, J.) ("When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee."), state common law of trusts, *see, e.g., United States v. Fontana*, 528 F.Supp. 137, 143 (S.D.N.Y.1981) (applying New York law); *Garner v. Pearson*, 374 F.Supp. 580, 586 (M.D.Fla.1973), and state criminal restitution statutes, *see, e.g.,* Fla. Stat.Ann. §§ 775.089 (court may impose restitution in addition to other punishment) and 948.03(1)(e) (restitution may be condition of probation) (West Supp.1984); N.Y. Pen.L. §§ 60.27 (restitution may be part of sentence) and 450.10 (court may order return of stolen property) (McKinney 1980 & Supp.1984). Thus, we must determine whether ERISA preempts these state law principles. Cf. *Northwest Airlines, Inc. v. Roemer*, 603 F.Supp. 7, 9 (D.Minn.1984).

Preemption is a question of Congressional intent, and may be express or implied by the statute's language, structure or purpose. *Northwest Airlines*, 603 F.Supp. at 9 (citing *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 2899, 77 L.Ed.2d 490 (1983); *Greyhound Corp. v. Mount Hood Stages, Inc.*, 437 U.S. 322, 98 S.Ct. 2370, 57 L.Ed.2d 239 (1978)). Preemption may occur where Congress expresses an intent to supersede state law in a given field. *See Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977); *see also Bellmore v. Mobil Oil*, 783 F.2d 300, 303–04 (2d Cir. 1986). ERISA provides that its provisions "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a). The term "relate to" is broad, and includes even a state human rights law that might be used to modify employee benefits, *Shaw*, 103 S.Ct. at 2900–01, and we see no reason to except from its breadth the state laws of restitution and constructive trusts invoked by Bache. *See* 1984 *U.S.Code Cong. & Ad.News*, 9th Cong., 2d Sess. 2547, 2565 (only those state court orders that are expressly excepted from ERISA's anti-alienation rule are not preempted by ERISA); *but see Cox*, 752 F.2d at 552 n. 3 ("Congress intended to preempt only those state laws relating directly to employee benefit plans"). It would thus appear that the state laws urged herein are preempted.

Of course, Congress' purported preemption of state law as applied to employee benefits cases is not dispositive where the asserted state law neither "actually conflicts with" ERISA, *see Fidelity Federal Savings & Loan Ass'n v. De La Cuesta*, 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982), nor "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of" ERISA, *see Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). *See also Bellmore, supra* at 303–04. Bache argues that Congress *impliedly* excepted from the anti-alienation provision of ERISA, 29 U.S.C. § 1056(d), the right of an employer to alienate traceable stolen funds that it or its employee contributed to

---

**3.** Bache does not dispute Ellis's claim to any funds in Kalil's accounts that are not traceable to the commissions Kalil generated from fraud-

a pension plan. This provision [4] requires that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d). The purposes of the anti-alienation provision have been construed to include the protection of the spendthrift employee from "his own financial improvidence in dealing with third parties," *American Telephone & Telegraph Co. v. Merry*, 592 F.2d 118, 124 (2d Cir.1979) and the prohibition of involuntary levies by third party creditors on vested plan benefits, *see Northwest Airlines*, 603 F.Supp. at 9–11. We must determine whether the provision was intended similarly to preclude an *employer* from reclaiming funds reflecting illegal earnings. Because the legislative history on section 1056 is sparse,[5] we are compelled to consider other indicia of legislative intent.

In enacting section 1056(d), Congress did not intend to preclude *all* assignments and alienations of pension plan funds. Indeed, in *Merry*, 592 F.2d 118, this Court recognized a family support exception, which Congress later codified in its amended ERISA statute, 29 U.S.C.A. § 1056(d)(3) (West 1975 & Supp.1985). Admittedly, the present case does not invoke the need, understood in *Merry*, to vindicate ERISA's fundamental purpose of achieving a private retirement benefits system that protects workers *and their families*. However, *Merry* provides four tests of legislative

intent that we might employ, as did the court in *Vink*, in assessing Bache's argument for a theft or fraud exception to ERISA's anti-alienation provision.

First, in *Vink* the court noted that while the family support exception recognized in *Merry* involved domestic relations, which are traditionally within the realm of state police powers, the refusal to allow an employer to retain vested pension benefits of an employee who has been convicted of fraudulent activity in the course of his employment does not usurp any state function. *Vink*, 549 F.Supp. at 271. Bache urges us to imply a theft or fraud exception in this case in order to avoid a conflict with the states' interest in seeing that theft victims recover property that has been stolen from them. We find it significant, however, that the Florida state court ordered Kalil to make restitution payments not to Prudential-Bache, but only to its defrauded customers. Thus, even assuming that a state's interest in enforcing court orders of restitution to crime victims is of the same magnitude as the fundamental state interest in regulating domestic relations recognized in *Merry*, such an interest is not implicated here. Second, while *Merry* rested on the express fundamental purpose of ERISA to provide income to workers *and their families*, we agree with the view stated in *Vink* that "[i]n no way would creating a fraud exception promote the

ulent securities transactions. *See* Br. of Add'l Def. on Counterclaim-Appellant at 12 n. 4.

**4.** Bache properly maintains that its action for a constructive trust arises not under ERISA's *anti-forfeiture* provision, 29 U.S.C. § 1056(c), which precludes an employer from forfeiting on payment of pension plan funds legally payable to the employee, but under the *anti-alienation provision*, 29 U.S.C. § 1056(d), which, subject to certain limited exceptions, prohibits the assignment or alienation of such funds, whether by the employer, a third party, or even the employee himself. See *Northwest Airlines*, 603 F.Supp. at 10. It is under the inapplicable anti-forfeiture provision that courts have struck down so called "bad boy" defenses by which employers have sought to forfeit on paying benefits because the employee was dishonest, engaged in misconduct or competed with the company after leaving. *See Vink*, 549 F.Supp. at 270; 120

Cong.Rec. at 29197 (1974), *reprinted in* 3 Legislative History 4669, *quoted in Winer v. Edison Bros. Stores Pension Plan*, 593 F.2d 307, 311 (8th Cir.1979); *see also* Lee, *ERISA's "Bad Boy": Forfeiture for Cause in Retirement Plans*, 9 Loy.U. Chi.L.J. 137 (1977). Hence, we find inapposite the district court's holding that the present case does not warrant "the making of a judicial exception to ERISA's clear policy against 'bad boy' defenses." *Ellis Nat'l Bank v. Irving Trust Co.*, 84 Civ. 3669, mem. and order (S.D.N.Y. April 2, 1985).

**5.** *See Northwest Airlines*, 603 F.Supp. at 9–10 (the "only available history" relates to voluntary assignments up to ten percent) (quoting H.Conf. Rep. 93–1280, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 4639, 5061); *see also General Motors Corp. v. Buha*, 623 F.2d 455 (6th Cir.1980) (legislative history of ERISA inconclusive).

well-being of the dependents of faithless employees whose pension benefits are taken away." On the contrary, such an exception "not only would be harmful to employees' dependents, but could also result in increasing the number of public charges." *Id.* Indeed, increasing the number of public charges would itself impinge on state and federal interests. Third, unlike in *Merry* and *Cartledge v. Miller*, 457 F.Supp. 1146 (S.D.N.Y.1978) (Weinfeld, J.), the exception urged in the present case does not come recommended by the Labor and Treasury Departments, " 'which are charged with enforcement and interpretation of [ERISA], and whose interpretation of the Act, though not controlling, is entitled to great weight.' " *Vink,* 549 F.Supp. at 272 (quoting *Cartledge,* 457 F.Supp. at 1156); *see also Skidmore v. Swift, & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944).

Finally, as was observed in *Vink,* there are few cases supporting the theft or fraud exception urged upon us, in contrast to the "abundance of precedents" supporting the family support exception urged in *Merry.* See *Vink,* 549 F.Supp. at 272 (noting that *Helmsley-Spear, Inc. v. Winter,* 74 A.D.2d 195, 426 N.Y.S.2d 778, 780 (1980), *aff'd,* 52 N.Y.2d 984, 419 N.E.2d 1078, 438 N.Y.S.2d 79 (1981) disapproved "the one case [then] at all on point" in favor of the theft or fraud exception, *National Bank of N. Am. v. International Bhd. of Elec. Workers Local 3, Pension and Vacation Funds,* 69 A.D.2d 679, 419 N.Y.S.2d 127 (2d Dep't), *appeal dismissed as moot,* 48 N.Y.2d 752, 397 N.E.2d 1333, 422 N.Y.S.2d 666 (1979)).

Since *Vink* was decided, another court has assessed the argument for a theft or fraud exception, and has held such an exception to be appropriate. In *Cox,* 752 F.2d at 550, the Eleventh Circuit Court of Appeals considered the exception in the context of a convicted bank president's mishandling of bank funds. In upholding the garnishment by the defrauded bank's subrogee of the employee's pension funds, the court recognized a "criminal misconduct" exception to ERISA's provision against alienation. *Cox,* 752 F.2d at 552.

Despite its equitable appeal, the "criminal misconduct" exception in *Cox* in our view undermines a fundamental purpose of ERISA that we believe should be modified, if at all, only by Congress. *See Vink,* 549 F.Supp. at 273. In enacting ERISA, Congress created a new public law of private benefits, a law designed to remedy through a regulated private sector system a host of defects that the old social security system has been found to have. Congress' primary objective was to ensure that "if a worker has been promised a defined pension benefit upon retirement—and if he has fulfilled whatever conditions are required to obtain a vested benefit ... he actually receives it." *Alessi v. Raybestos-Manhattan, Inc.,* 451 U.S. 504, 510, 101 S.Ct. 1895, 1899, 68 L.Ed.2d 402 (1981), *quoted in Vink,* 549 F.Supp. at 269–70. We do not say that it is inconceivable that, were Bache allowed to proceed to trial, it might indeed recover some or all of the pension funds that it claims are traceable to fraud on Kalil's part. We merely say that to permit such recovery—indeed, perhaps even to permit the placement in escrow of the trust corpus, beyond the reach of the employee, *pendente lite*—would threaten the fundamental objective envisioned by Congress. Contrary to the Eleventh Circuit's holding, we think that even a narrow judicially created "criminal misconduct" exception would undermine, rather than promote, the stability of the pension plan and its employee members by creating uncertainty and potentially delayed receipt or non-receipt of promised benefits.

Finally, we note that the creation of a "criminal misconduct" exception would lead to serious questions regarding the scope of the exception, which would likely be resolved only through a "boundless stream of suits and disputes." *Vink,* 549 F.Supp. at 273. Would the exception be available to only employers or pension plans, or also to third parties allegedly victimized, such as creditors, the government or even other employees? Would the exception withstand a charge that it would favor business tort claimants over creditors? Would it

pave the way for exceptions for noncriminal fraud or conversion?

We decline to alter the Congressional scheme in ERISA regarding pensions as urged by appellant.

Affirmed.