In the Matter of MORGAN GUARANTY TRUST COMPANY OF NEW YORK, as Successor Trustee under AMERICAN MOTORS CORPORATION UNION RETIREMENT INCOME PLAN, Petitioner, v TAX APPEALS TRIBUNAL OF THE NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE et al., Respondents.

Third Department, May 9, 1991

APPEARANCES OF COUNSEL

*Davis, Polk & Wardwell (John A. Corry, William Parsons, Jr., and Leslie H. Hoffman of counsel), for petitioner.*

*Robert Abrams, Attorney-General (Daniel Smirlock and Nancy A. Spiegel of counsel), for respondents.*

### OPINION OF THE COURT

YESAWICH, JR., J.

At issue is whether this State's 10% gains tax *(see,* Tax Law art 31-B) on real property transfers applies to a transaction completed by a qualified employee benefit plan under the Federal Employee Retirement Income Security Act of 1974 (hereinafter ERISA) *(see,* 29 USC § 1001 *et seq.).* We conclude that it does not.

The parties have stipulated to the relevant facts. Petitioner has served as successor trustee for American Motors Corporation's Union Retirement Income Plan (hereinafter the plan) since 1969. Prior to that time, a not-for-profit corporation whose stock was completely owned by the plan purchased real property from the employer of the employees covered by the plan. This property was then leased back to the seller for a 25-year term.

Thereafter, ERISA was enacted. Because ERISA prohibited this leasing arrangement, the trustee caused the not-for-profit corporation to sell the property. The consideration for the sale was $2,775,640.20. Petitioner paid the State $205,262.62, representing 10% of the plan's gain on the transaction, pursuant to Tax Law article 31-B (hereinafter the gains tax) and then filed a refund claim with the State Department of Taxation and Finance. Petitioner argued that ERISA superseded the gains tax. Denial of the refund prompted petitioner to appeal. An Administrative Law Judge granted the refund. He concluded that because the real property was an asset held by a qualified ERISA plan, was transferred by the plan to comply

with ERISA laws relating to investment requirements* and petitioner was directly taxed on the profit realized on this transaction, the gains tax "relate[d] to" an employee benefit plan and was accordingly preempted (29 USC § 1144 [a]).

Respondent Tax Appeals Tribunal disagreed. It reasoned, in part, that the gains tax is not directed at ERISA plans, but rather is a neutral tax of general application. Citing *Aetna Life Ins. Co. v Borges* (869 F2d 142, *cert denied* — US —, 110 S Ct 57) and *Rebaldo v Cuomo* (749 F2d 133, *cert denied* 472 US 1008), it also found that economic impact on a qualified ERISA plan does not, in and of itself, trigger preemption. It concluded that because the effect of the gains tax on the plan was tangential, preemption was not mandated. With one member dissenting, the Tribunal reversed the Administrative Law Judge's determination and dismissed the petition. Petitioner thereupon instituted this CPLR article 78 proceeding to review the Tribunal's determination. The essence of petitioner's argument is that ERISA preempts State taxes imposed directly upon qualified employee benefit plans.

In our view, the statutory language combined with the illuminating legislative history indicates that State tax laws were intended to be preempted. The preemption provision proclaims that ERISA "shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan" (29 USC § 1144 [a] [emphasis supplied]). The parties agree that State tax laws which "relate to" ERISA qualified employee benefit plans are preempted *(see, Firestone Tire & Rubber Co. v Neusser,* 810 F2d 550, 556; *Birdsong v Olson,* 708 F Supp 792, 797; *Northwest Airlines v Roemer,* 603 F Supp 7, 12). And it is now beyond dispute that a State law need not regulate the terms and conditions of a covered plan, nor be specifically designed to affect these plans, to be preempted *(Ingersoll-Rand Co. v McClendon,* 498 US —, —, 111 S Ct 478, 482-483). It is enough if an indirect effect results *(supra,* 498 US, at —, 111 S Ct, at 483; *see, Pilot Life Ins. Co. v Dedeaux,* 481 US 41, 47; *see also, Alessi v Raybestos-Manhattan, Inc.,* 451 US 504, 525). Preemption is unwarranted, however, when the effect of the State statute is merely "tenuous, remote, or peripheral" *(Shaw v Delta Air Lines,* 463 US 85, 100, n 21).

---

* Respondent Tax Appeals Tribunal disagreed with this finding. It found that petitioner "had other options available to it in addition to selling the property". Petitioner does not challenge this finding.

To determine whether preemption is warranted, it is necessary to understand Congress' purpose in enacting the legislation *(Metropolitan Life Ins. Co. v Massachusetts,* 471 US 724, 747), while at the same time bearing in mind the judicial caveat that, absent persuasive evidence that preemption was the legislative objective, such a finding is disfavored *(Alessi v Raybestos-Manhattan, Inc., supra,* at 522; *Sasso v Vachris,* 66 NY2d 28, 33).

Concerned that the ability of employee welfare and pension plans to pay promised benefits was endangered (29 USC § 1001 [a]), Congress enacted ERISA to encourage employers to develop benefit plans (Gregory, *The Scope of ERISA Preemption of State Law: A Study in Effective Federalism,* 48 U Pitt L Rev 427, 454 [1987]) and to safeguard the financial soundness of these plans (29 USC § 1001 [a]; *see, Shaw v Delta Air Lines, supra,* at 90; *Sasso v Vachris, supra,* at 31). To further these goals, Congress continued plan exemption from Federal taxation *(see,* 120 Cong Rec S 29,944 [1974] [statement of Sen. Long]).

Turning specifically to the enactment of the preemption provision, it is noteworthy that Congress rejected a proposal by the Secretaries of Labor and Treasury which would have allowed States to regulate the tax aspects of these plans, including the taxation of plan income *(Northwest Airlines v Roemer,* 603 F Supp 7, *supra).* Thus, though fully alerted to the taxation issue, Congress chose not to exempt the States' power to tax from ERISA's expansive preemption provision *(National Carriers' Conference Comm. v Heffernan,* 454 F Supp 914, 917). Ostensibly, Congress did so because a State statute which directly taxes plan income would consume funds otherwise available to plan beneficiaries *(Birdsong v Olson,* 708 F Supp 792, 801, *supra).* And although Congress exempted certain State law provisions from ERISA's preemptive sweep, namely, banking, insurance, securities and criminal laws *(see,* 29 USC § 1144 [b] [2] [A]; [4]), it refused to similarly exclude State tax laws.

Moreover, in 1983 Congress confirmed that it did not intend to accord State tax laws exempt status when it extended ERISA's preemption exceptions to include Hawaii's Prepaid Health Care Act. In so doing, Congress declared that "[n]othing in [the provision relating to the Hawaii statute] shall be construed to exempt from [the preemption clause] * * * any *State tax law* relating to employee benefit plans" (29 USC

§ 1144 [b] [5] [B] [i] [emphasis supplied]). Thus, while the language of ERISA's preemption provision lends itself to legitimate disagreement as to what State conduct is exempt from preemption, Congress made it abundantly clear that State laws which tax plan earnings are not to be countenanced (HR Rep No. 807, 93d Cong, 2d Sess, reprinted in 1974 US Code Cong & Admin News 4677 ["earnings on the plan's assets are exempt from tax"]).

Respondents, citing *Ingersoll-Rand Co. v McClendon* (498 US —, 111 S Ct 478, *supra)*, argue that generally applicable statutes which function irrespective of the existence of a covered plan, like the gains tax at issue herein, cannot be preempted. As petitioner indicates, the corollary of this argument, which gives emphasis to its flaw, is that it limits preemption to State statutes explicitly directed at ERISA plans. This thesis was unequivocally repudiated by the United States Supreme Court *(see, e.g., FMC Corp. v Holliday,* 498 US —, —, 111 S Ct 403, 408 [Congress did not mean to preempt only State laws specifically designed to affect employee benefit plans]; *Mackey v Lanier Collection Agency & Serv.,* 486 US 825, 831 [the preemptive force of 29 USC § 1144 (a) not limited to State laws singling out ERISA plans]; *see also, Pilot Life Ins. Co. v Dedeaux,* 481 US 41, 47-48, *supra; cf., Lee v Du Pont de Nemours & Co.,* 894 F2d 755, 756, *reh denied* Apr. 12, 1990 ["(p)reempted state law includes any state cause of action that relates to an employee benefit plan, even if the action arises under general state law that in and of itself has no impact on employee benefit plans"]). Moreover, interpreting ERISA as preempting only those State laws expressly designed to affect covered plans ignores the fact that ERISA contains specific preemption exclusions *(see, e.g.,* 29 USC § 1144 [b] [2] [A]). Had Congress intended the preemption clause to apply only to State laws dealing explicitly with these plans, it would have been unnecessary for Congress to have exempted generally applicable State criminal statutes *(see, Shaw v Delta Air Lines,* 463 US 85, 98, *supra).*

In any event, case law has determined that general applicability per se is not sufficient to avoid preemption *(see,* Irish & Cohen, *ERISA Preemption: Judicial Flexibility and Statutory Rigidity,* 19 U Mich J L Ref 109, 151, n 190 [1985]; *see, e.g., Shaw v Delta Air Lines, supra,* at 97 [New York's Human Rights Law, which prohibits discrimination on the basis of pregnancy, is preempted]; *Lee v Du Pont de Nemours & Co., supra,* at 758 [State law fraud and negligent misrepresentation

claims preempted]; *Cefalu v Goodrich Co.,* 871 F2d 1290, 1294 [State breach of contract claims preempted because measure of damages dependent on plan]; *General Motors Corp. v California State Bd. of Equalization,* 815 F2d 1305, 1309, *cert denied sub nom. General Motors Corp. v Bennett,* 485 US 941 [premiums tax assessed against insurer and calculated with reference to benefits paid by ERISA plan relates to ERISA]; *Northwest Airlines v Roemer,* 603 F Supp 7, *supra* [State tax law permitting officials to levy on ERISA plan to satisfy State income tax liability of plan participant preempted]).

And we are not persuaded by respondents' contention that the gain tax's effect on ERISA plans is tenuous and remote at best. Unquestionably our State's gains tax is not directed specifically at ERISA plans; however, its economic impact can hardly be considered insubstantial. It strikes us that a law which directly taxes income derived from the sale of a plan asset is related to the plan in more than simply a peripheral manner *(see, Birdsong v Olson,* 708 F Supp 792, 801, *supra).* As cogently observed by the Tribunal's dissenting member, unlike any other State tax laws challenged to date, this one "conflicts fundamentally with the purpose underlying * * * ERISA because it directly depletes the funds which presumably would be available to the beneficiaries under the Plan".

Casey, J. P., Mikoll, Mercure and Crew III, JJ., concur.

Determination annulled, with costs, petition granted and matter remitted to respondent Tax Appeals Tribunal for further proceedings not inconsistent with this court's decision.