OPINION OF THE COURT
Robert S. Rose, J.
In this action to recover $4,052.32 allegedly owed for medical services rendered by plaintiff hospital to Matthew Ritchie, the minor child of defendants Edmond and Carol Ritchie (Ritchie), defendants move for summary judgment dismissing the amended complaint on the grounds that plaintiff has been fully paid at the rate of reimbursement applicable under the Public Health Law (§ 2807-c [1] [c]), that plaintiff is relying on a rate of reimbursement (§ 2807-c [1] [b]) that is not applicable to the health benefit plan provided to the Ritchies by defendant CNY Painter & Allied Trades Health & Welfare Trust Funds (Trust Fund), and that the provisions of the Employee Retirement Income Security Act (ERISA) (29 USC § 1001 et seq.) would supersede the higher statutory rate of reimbursement even if it were applicable here. Plaintiff cross-moves for summary judgment in its favor on the grounds that the proper rate of reimbursement is provided by section 2807-c (1) (b) and that it is not superseded or preempted by ERISA because the provisions of section 2807-c are merely collateral to the benefit plan covering the Ritchies.
The relevant facts are undisputed. The Ritchies are participants in defendant Trust Fund which is a self-funded employee benefit plan that provides certain health benefits. It is a jointly trusteed entity formed pursuant to the Taft-Hartley Law and in compliance with ERISA. Under the terms of its plan, the Trust Fund pays 80% of the next $1,000 of covered medical expenses once a participant meets the annual deductible. Thereafter, the plan pays 100% of the covered expenses, but not in excess of what the covered participant would be legally obligated to pay. When a claim for in-patient hospital expense is approved, the plan’s practice is to send a two-party check, made payable to both the participant and the hospital, to the participant. The participant then endorses the check and forwards it to the hospital.
In September of 1988, plaintiff provided medical services to Matthew Ritchie. Using the reimbursement rate it deemed to be applicable, plaintiff prepared and submitted a bill for *785 services rendered in the amount of $5,829.78. The actual charges for those services were $1,779.46. Of this amount, the Trust Fund through its agent, Upstate Administrative Services, paid $1,613.52 and the Ritchies paid $165.94. Defendants refused to pay the balance of $4,050.32 claimed by plaintiff because they dispute the rate of reimbursement. Plaintiff then commenced this action to recover that balance. Subsequently, the parties stipulated to the discontinuance of this action against Upstate Administrative Services.
Given these facts, the parties’ motions present two questions. First, does ERISA preempt the New York State statute regulating the rate of reimbursement? Second, if the statutory provisions are not preempted by ERISA, which rate of reimbursement is applicable here?
The threshold issue of whether ERISA preempts Public Health Law § 2807-c appears to be one of first impression, but the Federal authorities cited by the parties provide the general principles governing such preemption. Also, the Appellate Division, Third Department, recently discussed the analysis to be performed in making such a determination. In Matter of Morgan Guar. Trust Co. v Tax Appeals Tribunal (166 AD2d 96), the trustee of an employee benefit plan brought a CPLR article 78 proceeding to review the Tax Appeals Tribunal’s ruling sustaining a real property transfer gains tax assessment against the plan. The Third Department annulled that ruling and held that the 10% gains tax (see, Tax Law art 31-B), as applied to a real property transfer completed by a qualified employee benefit plan under ERISA, was preempted because it had a substantial and direct economic impact on ERISA plans (supra, at 98-99).
The court stated: "To determine whether preemption is warranted, it is necessary to understand Congress’ purpose in enacting the legislation * * * while at the same time bearing in mind the judicial caveat that, absent persuasive evidence that preemption was the legislative objective, such a finding is disfavored” (supra, at 99 [citations omitted]). As explained by the Third Department, "Congress enacted ERISA to encourage employers to develop benefit plans * * * and to safeguard the financial soundness of these plans” (supra). Also, the court recognized that the "preemption provision proclaims that ERISA 'shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan’ (29 USC § 1144 [a] [emphasis supplied])” (supra, at 98).
*786 The court then considered whether the gains tax law was "related” to the ERISA benefit plan and provided the following commentary. "|l]t is now beyond dispute that a State law need not regulate the terms and conditions of a covered plan, nor be specifically designed to affect these plans, to be preempted (Ingersoll-Rand Co. v McClendon, 498 US —, —, 111 S Ct 478, 482-483). It is enough if an indirect effect results (supra, — US, at —, 111 S Ct, at 483; see, Pilot Life Ins. Co. v Dedeaux, 481 US 41, 47; see also, Alessi v Raybestos-Manhattan, Inc., 451 US 504, 525). Preemption is unwarranted, however, when the effect of the State statute is merely 'tenuous, remote, or peripheral’ (Shaw v Delta Air Lines, 463 US 85, 100, n 21).” (Supra, at 98.)
In explaining this "relation” test, the United States Supreme Court has stated and reiterated that a State "law relates to an employee welfare plan if it has 'a connection with or reference to such a plan’ ”. (FMC Corp. v Holliday, 498 US —, —, 111 S Ct 403, 407 [1990], quoting Shaw v Delta Air Lines, 463 US 85, 96-97 [1983], supra.) In FMC v Holliday, the Supreme Court found that Pennsylvania’s antisubrogation law had a "reference” to ERISA benefit plans because that law referred to benefit-payment arrangements which included plans governed by ERISA. It also found that the Pennsylvania law had a "connection” with ERISA benefit plans because it subjected plan administrators to conflicting State regulations. (Supra, 498 US, at —, 111 S Ct, at 408-409.)
Applying this test here, it is clear first that Public Health Law § 2807-c has a "reference” to benefit plans, such as defendant Trust Fund, governed by ERISA. The statute states: "(b) Payments to general hospitals for reimbursement of inpatient hospital services provided to patients * * * enrolled in a self-insured fund which provides for reimbursement directly to general hospitals on an expense incurred basis * * * shall be case based payments per discharge” (Public Health Law § 2807-c [1] [b]). If there were indirect reimbursement, the residual "catch-all” provisions of paragraph (c) of section 2807-c (1) would also include such benefit plans governed by ERISA. Thus, the statute’s "reference” to ERISA plans is plain.
Second, the statute has clear "connections” with ERISA benefit plans. Since a plan which limits payment to the reimbursement of "actual expenses” would provide a different percentage level of coverage in New York than in a State that does not set reimbursement rates as New York does, plan administrators are subjected to the risk of conflicting State *787 regulations and would have to tie their payment terms to each State’s regulations to assure both compliance with the State’s rule and the intended level of coverage for the participant (see, FMC Corp. v Holliday, supra, 498 US, at —, 111 S Ct, at 408). A related "connection” is that the New York statute would impose an uncontemplated financial burden on plan participants, such as the Ritchies here, because the plan is not obligated to pay a benefit in excess of what the individual participant would be obligated to pay. At the same time, the plan’s very involvement as a reimbursing entity in this instance actually increases the amount charged for the services under the statute. Thus, either the plan or the participant must pay in excess of the actual charges by virtue of the statute’s establishment of a higher level of reimbursement. In either case, there is a substantial adverse impact upon the plan and its participants that may reduce their financial resources.
Plaintiff attempts to avoid the conclusion that this reference and these connections imply preemption by relying on the holding in Rebaldo v Cuomo (749 F2d 133 [2d Cir 1984], cert denied 472 US 1008). In Rebaldo, the Second Circuit Court of Appeals held that a New York statute (Public Health Law § 2807-a [6] [b]) regulating the amounts that a hospital can charge did not relate to the medical insurance plan involved and was therefore not preempted by ERISA (supra, at 138). However, dictum in the Rebaldo decision indicates that the court reached this conclusion because it did not find that the regulation of hospital charges modified the plan’s benefit scheme (supra, at 138-139).
In Rebaldo, the court recognized that the regulation of charges was a needed "experimental project” and a proper exercise of the State’s police powers to contain hospital costs (supra, at 140). To the extent that the regulation increased the plan’s cost of doing business by setting higher charges, the court found that the statute did not "relate” to a plan governed by ERISA (supra, at 138). The court found that such increased cost alone was merely an indirect economic impact of the statute and did "not run counter to ERISA’s aim of national uniformity in plan regulation” (supra, at 139).
Viewed in the perspective of the United States Supreme Court’s broadening of the "relation” test in FMC v Holliday (supra) and other cases, the court cannot agree that the holding in Rebaldo (supra) is either binding precedent or persuasive authority controlling the present action in spite of *788 the similarity of the statutes involved. Since the statute, if applied here, would affect the terms or benefits provided by the plan in a way that would require the plan to have terms specifically dependent upon New York’s regulations to provide a comparable level of coverage, the court finds that the statute does modify the plan by either requiring payment in excess of the plan’s terms or by penalizing the participant by effectively reducing the level of coverage below that contemplated by the parties. Clearly, preemption was intended in such circumstances (see, FMC Corp. v Holliday, supra, 498 US, at —, 111 S Ct, at 408-409; see also, General Elec. Co. v New York State Dept. of Labor, 891 F2d 25, 28-29 [2d Cir 1989]).
However, even if the court were to conclude that Public Health Law § 2807-c (1) is not preempted by ERISA, plaintiff’s claim would still fail. The court cannot agree that section 2807-c (1) (b) is applicable here simply because the Trust Fund makes payment to the hospital by means of its two-party check. Section 2807-c (1) (b) applies where the "fund * * * provides for reimbursement directly to general hospitals on an expense incurred basis” (emphasis supplied). While the rationale for connecting the level of reimbursement to the distinction between direct and indirect payment is not disclosed in the statute or its legislative history, that distinction is a controlling factor.
The pertinent statutory language is not ambiguous, and the issue turns upon the construction of the phrase "reimbursement directly”. "In statutory construction, commonly used words must be given their usual and ordinary meaning, unless it is plain from the statute that a different meaning is intended” (Regan v Heimbach, 91 AD2d 71, 72). "Directly” means "in a direct manner” and "without delay”. "Direct” means "proceeding from one point to another in time or space without deviation or interruption” and "without an intervening agency or step”. (Webster’s Ninth New Collegiate Dictionary 358.) Thus, common sense and the ordinary usage of the word "directly” in the context of reimbursement for medical services lead only to the conclusion that what is meant is payment transmitted by a plan to a provider without the intervention or action of the participant (or other third party). Using the two-party check method, the Trust Fund does not transmit payment directly, but rather gives the participant the power to control, delay, or even prevent payment to the provider. Conceivably, if the participant already had paid the provider, the provider could be required to endorse the check *789 first and then the participant would be reimbursed by its proceeds.
Since the Trust Fund does not make payment directly to the hospital, paragraph (c) rather than paragraph (b) of section 2807-c (1) would be applicable here. Thus, nothing is owed to plaintiff because payment was made in the amount calculated pursuant to that paragraph.
Accordingly, defendant’s motion is granted and plaintiff’s cross motion is denied.