**Nicholas VINK, Plaintiff,**

v.

**SHV NORTH AMERICA HOLDING CORP., et al., Defendants.**

**No. 80 Civ. 2366 (RLC).**

United States District Court, S.D. New York.

Oct. 8, 1982.

Nicholas Vink, pro se.

Taft, Stettinius & Hollister, Cincinnati, Ohio, Burns, Summit, Rovins & Feldesman, New York City, for Thomas T. Terp, Cincinnati, Ohio, Stuart A. Summit, Ira G. Greenberg, New York City, Laura S. Ellin, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

This case involves a faithless employee who is seeking the protection of the law to force his former employer to remain faithful in its pension obligations to him. The plaintiff, Nicholas Vink, appearing *pro se,* has brought suit under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.,* to

compel the defendants, SHV North America Holding Corporation ("SHV"), his former employer, and Leo Wiest, trustee of SHV's pension plan, to pay him the pension benefits that he asserts are due him. SHV has refused to make pension payments to Vink because Vink was convicted of defrauding an SHV subsidiary, of which he was president. In addition, SHV has counterclaimed to compel Vink to disgorge both illegal kickbacks he received from SHV customers and profits he made by diverting SHV business to dummy corporations that he had set up. Vink has moved for summary judgment on his pension claim.[1]

From August 1947 through October 1979, Vink was employed by Geveke & Co. International, Inc. ("Geveke"), which became a subsidiary of SHV in 1972. Upon learning of Vink's fraudulent schemes, SHV dismissed Vink from his post as president of Geveke. SHV then cooperated with an investigation by the United States Attorney's office, which obtained an indictment of Vink. Vink ultimately pleaded guilty to mail fraud and making a false statement on a loan application to a federally insured bank. Specifically, Vink pleaded guilty to having received an illegal $25,000 kickback and bribe from a Geveke customer and supplier and to having represented falsely on a bank application that Geveke's board of directors had agreed to guarantee repayment of a $95,000 personal loan that Vink sought. Judge Pierre Leval of this court sentenced Vink to 14 months in prison.

SHV has refused to make pension payments to Vink out of its Deferred Profit Sharing Retirement Benefit Plan, stating that Vink forfeited his pension rights through these fraudulent activities. Moreover, SHV asserts that in addition to the above specified felonies, Vink received many more thousands of dollars in illegal kickbacks and diverted more than three million dollars of SHV business to dummy corporations that he had set up with his wife as sole shareholder. SHV contends that Congress, in passing ERISA, could not have possibly intended to require a company to make pension payments to an employee as faithless as Vink.

One of Congress' principal concerns in enacting ERISA was to make secure the vested rights of employees in pension plans, *Winer v. Edison Brothers Stores Pension Plan,* 593 F.2d 307, 310 (8th Cir. 1979). In ERISA's declaration of policy, Congress expressed concern that "despite the enormous growth in such plans many employees with long years of employment are losing anticipated retirement benefits owing to the lack of vesting pensions in such plans." 29 U.S.C. § 1001(a). Thus when Congress passed ERISA, it acted to limit severely the circumstances in which pensions would be forfeitable. It thus wrote into law that but for a very few circumscribed exceptions, "[e]ach pension plan shall provide that an employee's right to his normal retirement benefit is *nonforfeitable* upon the attainment of normal retirement age." 29 U.S.C. § 1053(a) (emphasis added).[2] The Conference report underlined this fact, noting that "except as outlined below [referring to the limited exceptions discussed in note 2, *supra* ], an employee's rights, once vested, *are not to be forfeitable for any reason.*" H.R. Conf.Rep. No. 93–1280, 93d Cong., 2d Sess. 271 (1974), reprinted in III Legislative History, 4538, U.S.Code Cong. & Admin.News, 1974, p. 5052 (emphasis added). The language of ERISA and its legislative history caused the Supreme Court to conclude "that Congress through ERISA wanted to ensure that 'if a worker has been promised a

1. Under 29 U.S.C. § 1132(a)(1)(B), individuals may bring civil actions for sums due them under the terms of their benefit plans. The court has jurisdiction over this case under 29 U.S.C. § 1132(e)(2).

2. "The statute expressly exempts from its forfeiture ban offsets that: (1) are contingent on the employee's death, 29 U.S.C. § 1053(a)(3)(A); (2) occur when the employee takes a job under certain circumstances, § 1053(a)(3)(B); (3) are due to certain restrictive amendments to a pension plan, § 1053(a)(3)(C); or (4) result from withdrawals of benefits derived from mandatory contributions, § 1053(a)(3)(D)." *Alessi v. Raybestos-Manhattan,* 451 U.S. 504, 511 n. 8, 101 S.Ct. 1895, 1900 n. 8, 68 L.Ed.2d 402 (1981). None of these exceptions applies in the case *sub judice.*

defined pension benefit upon retirement—and if he has fulfilled whatever conditions are required to obtain a vested benefit—... he actually receives it.'" *Alessi v. Raybestos-Manhattan, Inc.,* 451 U.S. 504, 510, 101 S.Ct. 1895, 1899, 68 L.Ed.2d 402 (1981), *quoting Nachman Corp. v. Pension Benefit Guaranty Corp.,* 446 U.S. 359, 375, 100 S.Ct. 1723, 1733, 64 L.Ed.2d 354 (1980). The Court added that "[f]or this reason, the concepts of vested rights and nonforfeitable rights are critical to the ERISA scheme." *Id.*

Congress coupled ERISA's nonforfeitability provision with a section barring assignment of vested benefits: "Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d). In addition, the regulations that the Internal Revenue Service promulgated pursuant to ERISA state "that benefits provided under the plan may not be ... assigned ... alienated or subject to attachment, garnishment, levy, execution or other legal or equitable process." 1 FTR § 1.401(a)(13)(b)(1) (1980). Taken together, these provisions prohibit both the voluntary and involuntary assignment of vested pensions. *Cody v. Riecker,* 454 F.Supp. 22, 24 (E.D.N.Y.1978), *aff'd,* 594 F.2d 314 (2d Cir. 1979); *Helmsley-Spear, Inc. v. Winter,* 74 A.D.2d 195, 426 N.Y.S.2d 778, 780–81 (1st Dep't 1980), *aff'd,* 52 N.Y.2d 984, 419 N.E.2d 1078, 438 N.Y.S.2d 79 (1981). It is unclear whether SHV in refusing to make pension payments to Vink has employed a species of forfeiture or of involuntary assignment of Vink's benefits back to the pension fund. Whichever the case may be, ERISA's nonforfeitability and nonassignability provisions clearly cover it.

Before ERISA was enacted, perhaps the most common situation in which employees forfeited their right to pension payments was when employers invoked "bad boy" clauses. *See generally* Lee, *ERISA's "Bad Boy": Forfeiture for Cause in Retirement Plans,* 9 Loy.U.Chi.L.J. 137 (1977). Such clauses generally provided that employees who were dishonest, engaged in acts of misconduct, or competed with their former company after leaving it would forfeit their pension benefits. Even though SHV apparently had no "bad boy" clause in its pension plan, the company is in effect invoking such a clause to deny Vink pension payments.

In passing ERISA, Congress aimed to overcome the effects of all such forfeiture clauses. During the floor debates on ERISA, Congressman Dent, Chairman of the General Subcommittee on Labor of the House Committee on Education and Labor and one of the bill's principal sponsors, stated that "[a]nother issue dealt with in the conference report is the policy against what has been described as 'bad boy' clauses." 120 Cong.Rec. 29197 (1974), *reprinted in* III Legislative History, 4669, *quoted in Winer, supra,* at 311. The House Committee on Ways and Means also made clear its intent to erase the effect of these clauses. It stated:

> With the limited exceptions noted above [referring to the exceptions described in note 2, *supra*], no rights, once they are required to be vested, may be lost by the employee under any circumstances .... For example, a vested benefit *is not to be forfeited because the employee* later went to work for a competitor, or in some other way *was considered "disloyal"* to the employer.

H.R.Rep. No. 93–807, 93d Cong., 2d Sess. 60 (1974), U.S.Code Cong. & Admin.News 1974, pp. 4639, 4726, reprinted in II Legislative History 3180 (footnote omitted) (emphasis added). One court analyzing ERISA's effect on such clauses stated that "[t]he legislative history is clear ... that § 203(a) [29 U.S.C. § 1053(a) ] was designed, in part, to prevent further enforcement of 'bad boy' clauses." *Winer, supra,* at 311; *Fremont v. McGraw-Edison Co.,* 606 F.2d 752, 757–58 (7th Cir. 1979), *cert. denied,* 445 U.S. 951, 100 S.Ct. 1599, 63 L.Ed.2d 786 (1980). One academic writer on the subject concluded that "[a]n examination of the legislative history of ERISA[ ] and the public policy underlying [it] will show that [the courts] should declare unenforceable all bad boy clauses ...." Lee, *ERISA's "Bad Boy": Forfeiture for Cause in Retirement Plans,*

*supra* at 145. *See also Pollock v. Castrovinci,* 476 F.Supp. 606, 614 n. 7 (S.D.N.Y.1979) (Goettel, J.), *aff'd,* 622 F.2d 575 (2d Cir. 1980) ("Prior to ERISA, pension plans commonly provided for a forfeiture of benefits in the event a former employee entered into competition with the sponsoring employer. ERISA ... proscribes such practices").

Notwithstanding the plethora of nonforfeitability language in the statute, in the case law, and in academic commentary, SHV urges the court to imply a "fraud" exception into the nonforfeitability provisions of ERISA. SHV argues that inasmuch as the Second Circuit has seen fit to imply a "family support" exception into ERISA's nonforfeiture, nonassignment provisions in order to further the public policy of enforcing family support orders, *American Tel. & Tel. Co. v. Merry,* 592 F.2d 118 (2d Cir. 1979); *accord Cody v. Riecker,* 594 F.2d 314 (2d Cir. 1979), the court should imply another exception in the case *sub judice* because of the public policy against rewarding fraud. In *Merry,* there were four strong reasons for implying an exception into ERISA, none of which exists in this case.

First was the proper mode of interpreting federal statutes that trench upon areas traditionally regulated under the state's police powers. The *Merry* court wrote:

the "generalized proscriptions" of ERISA's anti-alienation and assignment provision and the statute's preemption clause were "not sufficient to infer that Congress meant to preclude the ancient family law right of maintenance and support and the issuance of process to enforce that right." ... This construction is consistent ... with the "fundamental principle of statutory interpretation [whereby] courts have presumed that the basic police powers of the States, particularly the regulation of domestic relations, are not superseded by federal legislation unless that was the clear and manifest purpose of Congress."

*Merry, supra* at 122, *quoting Cartledge v. Miller,* 457 F.Supp. 1146, 1154 (S.D.N.Y. 1978) (Weinfeld, J.). Similarly, in *Cody v.*

*Riecker,* 454 F.Supp. 22, 24 (E.D.N.Y.1978), *aff'd,* 594 F.2d 314 (2d Cir. 1979), Judge Nickerson refused to presume congressional intent under ERISA to preempt and prevent court-ordered enforcement of the state-created spousal obligation "in the absence of an unambiguous declaration of intent." Here, Congress' declaration that vested pension benefits are nonforfeitable does not usurp "the basic police powers of the States." Here, there was "an unambiguous declaration of intent" by Congress to prevent the enforcement of "bad boy" clauses.

Second, the family support exception clearly furthers one of Congress' key objectives in enacting ERISA, i.e. "the continued well-being and security of employees *and their dependents.*" 29 U.S.C. § 1001(a) (emphasis added); *Merry, supra* at 124. What is more, the Second Circuit recognized that carving out a family support exception would help "combat increases in welfare payments resulting from an inability to compel payment of support obligations from solvent but unwilling parents." *Merry, supra* at 124, *quoting Hisquierdo v. Hisquierdo,* 439 U.S. 572, 587 n. 20, 99 S.Ct. 802, 811 n. 20, 59 L.Ed.2d 1 (1979), *citing* S.Rep. No. 93–1356, pp. 42–43 (1974), U.S.Code Cong. & Admin.News 1974, p. 8133. In no way would creating a fraud exception help promote the well-being of the dependents of faithless employees whose pension benefits are taken away. Indeed carving out the exception not only would be harmful to employees' dependents, but could also result in increasing the number of public charges.

Third, in *Merry* and *Cartledge v. Miller, supra,* the United States Departments of Labor and the Treasury filed amicus briefs urging the courts to imply a family support exception. On the other hand, in *Winer, supra,* one of the cases most on point to the case *sub judice,* the Department of Labor sued on behalf of the plaintiffs urging the Eighth Circuit to interpret ERISA's nonforfeiture, nonassignment language so as to prohibit companies from denying pension benefits to employees dismissed because they received illegal kickbacks from suppli-

ers. Thus, the arguments against implying a fraud exception are buttressed by the views of the federal departments "which are charged with enforcement and interpretation of ERISA and whose interpretation of the Act, though not controlling, is entitled to great weight." *Cartledge v. Miller, supra* at 1156, *citing Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944).

Fourth, the *Merry* court had an abundance of precedents to buttress its conclusion. *See, e.g., Cartledge v. Miller, supra; Cody v. Riecker, supra; Stone v. Stone,* 450 F.Supp. 919 (N.D.Cal.1978), *aff'd,* 632 F.2d 740 (9th Cir. 1980), *cert. denied,* 453 U.S. 922, 101 S.Ct. 3158, 69 L.Ed.2d 1004 (1981); *Cogollos v. Cogollos,* 93 Misc.2d 406, 402 N.Y.S.2d 929 (Sup.Ct.1978). Here, SHV cites only one case at all on point that supports its position, *National Bank of N. Am. v. International Bhd. of Elec. Workers Local 3, Pension and Vacation Funds,* 69 A.D.2d 679, 419 N.Y.S.2d 127 (2d Dep't), *appeal dismissed as moot,* 48 N.Y.2d 752, 397 N.E.2d 1333, 422 N.Y.S.2d 666 (1979), and that case was explicitly disapproved by the Appellate Division of the First Department in a decision that was affirmed by the New York State Court of Appeals, *Helmsley-Spear, Inc. v. Winter,* 74 A.D.2d 195, 426 N.Y.S.2d 778, 780 (1980), *aff'd,* 52 N.Y.2d 984, 419 N.E.2d 1078, 438 N.Y.S.2d 79 (1981). Indeed, relevant precedent argues against implying a fraud exception.

In *Winer, supra,* two salesmen were discharged after receiving improper payments of from $2,000 to $3,000 annually. Some of the payments were made each year for 20 years. The son and daughter of one of the salesmen received in excess of $2,000 from a supplier, while the other salesman took vacations to Saint Martin and Acapulco with a supplier. The company asserted that it could properly deny the two their pensions under its "bad boy" clause, but the court concluded that "[s]ince ERISA became effective ... the Retirement Committee could not thereafter enforce the [Pension] Plan's 'bad boy' clause without violating their statutory obligations." *Winer, supra* at 311.

In *Fremont v. McGraw-Edison Co., supra,* two employees, before voluntarily leaving their jobs, stole precious computer printouts, microfilm cards, customer lists, and price lists from the company, some of which contained valuable trade secrets and confidential information. With regard to the employee who continued working until after ERISA's vesting provisions took effect, the court rejected the company's contention that the employee "lost any right he had in the [pension] plan when he stole Company property...." *Fremont, supra* at 757. The court held that § 203(a) of ERISA, 29 U.S.C. § 1053(a), invalidated the "bad boy" clause which the defendant asserted had caused the faithless employee to forfeit his pension. *Id.*

The story was similar in *Helmsley-Spear, Inc. v. Winter, supra,* except that the defrauded company had received a court order allowing it to attach the defrauding employee's pension fund. The company accused Winter of engaging in a course of fraud involving false invoices from alleged suppliers, misappropriation of checks, and kickbacks from suppliers that resulted in a loss of $665,549 to the company. Winter was indicted with respect to some of these charges, but was convicted only of grand larceny totaling $8,584. The court ruled that ERISA's § 206(d), 29 U.S.C. § 1056(d), proscribing the assignment of pension plans, prohibited the company's attachment of Winter's pension fund. 426 N.Y.S.2d at 780-81. The court noted the "strong public policy against forfeiture of employee benefits manifested by [ERISA]." *Id.* at 781 (citation omitted).

SHV seeks to distinguish these cases by asserting that the fraud Vink perpetrated dwarfed that in the other cases. Assuming for the sake of argument only that Vink's fraud was indeed substantially larger than those in analogous cases, SHV's argument is still unpersuasive. Save for the limited exceptions spelled out in the statute, ERISA bars all forfeitability of vested pensions. It makes no distinction between small

frauds and large ones, and neither may this court.

SHV makes a similar argument urging the court to carve out an exception limited to when the faithless employee's misdeeds continued for a decade or more. SHV thus attempts to distinguish between this case, where Vink evidently defrauded the company for years, and a case like *Fremont, supra,* where the misdeeds were of short duration. Again, the defendant's argument must be rejected because nothing in the language or legislative history of the statute allows the court to distinguish between one-time swindlers and long-time thieves.

Another argument that SHV makes is that Vink's pension benefits were "conditional" upon his furnishing proper consideration for them, i.e. upon his working as a faithful employee. This is the same argument made in *Winer* and *Fremont,* though cloaked in different garb. In those cases, the companies argued that the employees had automatically forfeited their pension benefits as soon as they acted dishonestly. The companies argued that the employees should not be entitled to ERISA's protection because had they not concealed their improprieties, the employees would have been discharged before ERISA's pension protections took effect. As the Seventh Circuit stated in *Fremont,* such an argument

> has no merit because it flies in the face of the purpose of § 203 [of ERISA, 29 U.S.C. § 1053,] to prohibit forfeiture of accrued benefits regardless of whether the employees engaged in improper conduct of any kind. Were we to uphold the Company's estoppel theory, it could for decades forfeit employee pension benefits for employee bad acts that occurred prior to the effective date of § 203.

*Fremont, supra* at 758.

Lastly, it appears that if ever there were a case to carve out a "fraud" exception to ERISA's nonforfeitability provisions, this might be such a case. It is most dismaying that Vink's fraudulent actions will subtract from the amounts that SHV's faithful employees will receive under the company's profit-sharing pension plan. Nevertheless, Congress has spoken, and the statute makes clear that the pension benefits of both faithless employees like Vink and faithful ones are to be protected, even if it means that the faithful employees will suffer at the expense of the faithless ones.

Carving out an exception in this case would start a boundless stream of suits and disputes in which companies refuse to pay pension benefits to allegedly disloyal employees. Courts would then have to determine whether a fraud exception should apply only to felonies, or whether it should apply to misdemeanors and acts of negligence as well.

Regulation is an imprecise science. Decisions about who and what should be regulated are for Congress to make, so long as such regulations do not offend the Constitution. If SHV would like to create a fraud exception to ERISA's nonforfeitability provisions, it should address its arguments to Congress, not to this court.

■ Taken together, the language of ERISA, its legislative history, judicial precedent, and academic comment persuade the court that it would be improper to create a "fraud" exception that would allow companies to deny vested pension benefits to disloyal employees. Although the court is reluctant to see a claimant who has acted as reprehensibly as Vink rewarded, the constraints of the statute mandate that Vink be granted summary judgment on his right to his pension benefits.

Several material issues remain to be resolved, however. Vink, who is 61 years of age, insists that pension payments are due him immediately, while SHV asserts that no payments are due until Vink turns 65. Furthermore, there appears to be some disagreement as to how large Vink's pension fund is. These issues can be resolved on the merits only through an evidentiary hearing. Consequently, summary judgment is denied on these matters.

Vink has never filed an answer to SHV's counterclaim. He is now given until October 29, 1982, to respond.

IT IS SO ORDERED.