**Curtis GUIDRY, Plaintiff,**

v.

**NATIONAL SHEET METAL WORKERS' NATIONAL PENSION FUND, et al., Defendants,**

**and**

**Sheet Metal Workers' International Association, Local No. 9, Intervenor,**

**and**

**Sheet Metal Workers' Local No. 9 Pension Fund, Party Under F.R.Civ.P. 19.**

**Civ. A. No. 84–M–879.**

United States District Court, D. Colorado.

July 23, 1986.

---

Michael P. Serruto, Robert Pennington, Elrod, Katz, Preeo & Look, P.C., William E. Myrick, Denver, Colo., for plaintiff and third-party defendant, Curtis Guidry.

Joseph M. Goldhammer, Brauer & Buescher, P.C., Denver, Colo., for intervenor.

Pamela M. Martin, Lakewood, Colo., Raymond J. Sweeney, Guerrieri & Sweeney, Professional Law Corp., Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

MATSCH, District Judge.

This matter is before the court on cross motions for summary judgment filed by the plaintiff and the defendants, and the intervenor's motion for summary judgment on its sixth claim for relief. Oral argument was held on July 17, 1986.

The plaintiff, Curtis Guidry, was the chief executive officer of the intervenor Sheet Metal Workers' International Association, Local No. 9 ("the Union") from 1964 to September, 1981. He was also a trustee of the Sheet Metal Workers' Local No. 9 Pension Fund from 1977 to 1981. In 1982, he pleaded guilty to a violation of 29 U.S.C. § 501(c) for embezzlment of $377,301.53 from the Union, and he served a prison term for that crime. Mr. Guidry admitted to stealing money from 1977 to 1981 by depositing to his own accounts checks made payable to the Union from two trust funds, purportedly to compensate the Union for administrative services rendered to the trust funds. The money embezzled has not been recovered. The Union and Mr. Guidry stipulated to the entry of a $275,000 judgment on January 14, 1986 on the Union's first five claims for relief against Mr. Guidry.

Mr. Guidry applied for and was denied early retirement benefits by the Sheet Metal Workers' National Pension Fund and the Sheet Metal Workers' Local Unions and Councils Pension Plan in December, 1982. He brought this action to recover accrued pension benefits from September 30, 1981 to date, and specific performance of the two pension contracts. Alternatively, he seeks recovery for breach of contract and for negligence. Mr. Guidry also applied for early retirement benefits to the Sheet Metal Workers' Local No. 9 Pension Fund, joined as a defendant party pursuant to Fed.R.Civ.P. 19(a)(1) by the Union, and he began receiving benefits in July, 1985.

The defendant pension funds initially asserted in their motion for summary judgment that they owe no benefits to Mr. Guidry because he was never a "participant" or a "covered person" eligible for pension benefits because of his misconduct. Although not conceding this argument, they now have adopted a fallback position that if pension benefits are owed, the Union is entitled to them as the victim of the beneficiary's embezzlement. The Union asserts it is entitled to summary judgment on its claim that in equity this court should impose a constructive trust on all pension benefits owed to Mr. Guidry until the $275,000 judgment plus interest is paid. Mr. Guidry claims that provisions of the Employee Retirement Income Security Act ("ERISA") prevent both forfeiture and a constructive trust, and that he is entitled to his undiminished pension as a matter of law.

■ ERISA sets forth nonforfeitability requirements in 29 U.S.C. § 1053(a), which

provides that "[e]ach pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable" if the employee meets certain age and years of service requirements found in that section. As interpreted by several courts, that provision precludes forfeiture of pension benefits because of the employee's misconduct. *See Fremont v. McGraw-Edison Co.*, 606 F.2d 752 (7th Cir.1979), *cert. denied*, 445 U.S. 951, 100 S.Ct. 1599, 63 L.Ed.2d 786 (1980); *Winer v. Edison Brothers Stores Pension Plan*, 593 F.2d 307 (8th Cir.1979). Even in circumstances in which an employee defrauded his company and pleaded guilty to crimes related to his fraudulent schemes, ERISA has been held to bar forfeiture of vested pension benefits. *Vink v. SHV North America Holding Corp.*, 549 F.Supp. 268, 273 (S.D. N.Y.1982). The court found that ERISA protected all employees from a fraud exception to the nonforfeitability provision.

The defendants' assertion that Mr. Guidry never was eligible for benefits because of his misconduct is contrary to section 1053(a) and precedent. Forfeiture is precluded even in these circumstances, and Mr. Guidry is entitled to his vested pension benefits as a matter of law.

Although it is clear that Mr. Guidry has a right to pension benefits, the question remains whether this court may impose a constructive trust in favor of the Union. The plaintiff argues that just as Congress has barred forfeiture, it has proscribed assignment or alienation of plan benefits in 29 U.S.C. § 1056(d)(1), which states "Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated." Although the language of section 1056(d)(1) is unconditional, Congress has recently enacted an exception to that provision pursuant to a "qualified domestic relations order" for family support after courts had found an implied exception. *See, e.g., American Telephone & Telegraph Co. v. Merry*, 592 F.2d 118 (2d Cir.1979). *Merry* held that ERISA's preemption clause, 29 U.S.C. § 1144, did not alter traditional support obligations. The plaintiff argues that Congress provided one

exception only, and that to imply another exception for fraud would be contrary to the clear intent of Congress.

Two circuits have reached contrary conclusions on this issue. In *Ellis National Bank of Jacksonville v. Irving Trust Co.*, 786 F.2d 466 (2d Cir.1986), the court refused to create a criminal misconduct exception to section 1056(d)(1) and ERISA's preemption clause. The court distinguished such a case from the family support exception which clearly furthered Congress' key objective in enacting ERISA to protect workers and their dependents. In contrast, the court in *St. Paul Fire and Marine Insurance Co. v. Cox*, 752 F.2d 550 (11th Cir.1985) held that the nonalienability provision of ERISA did not preclude application of the equitable principle that a wrongdoer should not profit from his own misdeeds. The court permitted garnishment of the pension payments. Neither case is controlling.

None of the cases cited presented the unique circumstances of the case before this court involving a labor union, pension plans for its members, and a former employee who used his position of trust with the union and pension plans to embezzle funds. The question is not whether particular state law is preempted by ERISA, but how to interpret the nonalienability provision's effect on other federal statutes. While it is essential to interpret ERISA in light of Congress' intention to protect employees and their families from loss of vested rights, ERISA must be read in pari materia with other important federal labor legislation. Congress enacted the Taft-Hartley Act—The Labor Management Relations Act of 1947—in part "to protect the rights of individual employees in their relations with labor organizations." 29 U.S.C. § 141(b). When it became apparent that certain union officers abused the power they acquired, Congress regulated the internal affairs of labor organizations by its passage of the Landrum-Griffin Act—the Labor Management Reporting and Disclosure Act of 1959. Stated purposes of the act were to eliminate corrupt practices on

the part of union officers and to protect the rights and interests of workers. *See* 29 U.S.C. § 401.

 Congressional intent becomes clearer when the purposes of all three statutes are examined as a whole. Congress intended to protect employees from improper practices of employers and of the employees' own elected union officials. In circumstances where the viability of a union and the members' pension plans was damaged by the knavery of a union official, a narrow exception to ERISA's anti-alienation provision is appropriate. Benefits payable to Curtis Guidry will be held in constructive trust until the entire judgment entered against him by the Union is satisfied.

Accordingly, it is

ORDERED that the plaintiff Curtis Guidry is entitled to vested pension benefits and his motion for summary judgment is granted; and the clerk will enter judgment for Curtis Guidry and against the Sheet Metal Workers' National Pension Fund, the Sheet Metal Workers' Local Unions and Councils Pension Plan, and their trustees, and against the Sheet Metal Workers' Local No. 9 Pension Plan; and it is

FURTHER ORDERED that the intervenor's motion for summary judgment on its sixth claim for relief is granted, and the clerk shall enter judgment for the Sheet Metal Workers' International Association, Local No. 9 and against Curtis Guidry, the Sheet Metal Workers' National Pension Fund, the Sheet Metal Workers' Local Unions and Councils Pension Plans, and the Sheet Metal Workers' Local No. 9 Pension Plan; and it is

FURTHER ORDERED that all pension benefits accrued to the date of judgment and owed to Curtis Guidry from the three pension funds are immediately payable to the Sheet Metal Workers' International Association, Local No. 9; and a constructive trust is imposed upon future payments of pension benefits owed to Curtis Guidry such that those benefits shall be paid directly to the Union until the $275,000 judgment plus interest entered January 14, 1986 has been satisfied.