**UNITED METAL PRODUCTS CORPORATION, Plaintiff-Appellant,**

v.

**NATIONAL BANK OF DETROIT, Defendant-Appellee.**

No. 85–2004.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 14, 1986.

Decided Feb. 5, 1987.

Stuart J. Snider, Fitzgerald, Young, Peters, Dakmak & Bruno, Detroit, Mich.,

Neill T. Peters (argued), Robert L. Sharbaugh, for plaintiff-appellant.

Christina S. Rueff (argued), Law Dept., Detroit, Mich., Stephen A. Lang, for defendant-appellee.

Before WELLFORD and GUY, Circuit Judges, and PECK, Senior Circuit Judge.

RALPH B. GUY, Jr., Circuit Judge.

Plaintiff appeals the trial court's adverse decision in this declaratory judgment action. The issue below and on appeal is whether we should create an implied exception to the anti-alienation provisions of ERISA, 29 U.S.C. § 1056(d), and the Internal Revenue Code, 26 U.S.C. § 401(a)(13), and allow an employer to garnish an employee's pension or profit sharing fund when that employee commits fraud against the employer. The trial court declined to do so. We agree and therefore affirm.

Plaintiff United Metal Products maintains a profit sharing plan for the benefit of its employees. Defendant is the trustee of the plan. Blandina Coelho, plaintiff's bookkeeper for many years, was a participant in the plan. On December 19, 1984, plaintiff obtained a judgment against Coelho in the amount of $441,408.72, arising from Coelho's embezzlement and conversion of funds belonging to plaintiff.[1]

On January 15, 1985, plaintiff secured a writ of garnishment issued by the Oakland County Circuit Court directed to defendant. Defendant responded by filing a disclosure showing that it held $35,385.64 in an account in Coelho's name. At the same time, defendant refused to comply with the garnishment, contending that the account was not subject to garnishment under I.R.C. § 401(a)(13).

Plaintiff then brought this declaratory judgment action, asking that the court create an implied exception to the pension anti-alienation provisions, 29 U.S.C. § 1056(d) and 26 U.S.C. § 401(a)(13), appli-

---

1. Coelho's present whereabouts are unknown, although she is believed to be residing in Brazil. A warrant for her arrest has been issued.

cable in the case of employee embezzlement. The court below denied relief, concluding that whether such an exception is warranted is a question to be addressed by Congress, not the courts. On appeal, plaintiff urges us to reverse the trial court.

Nearly identical provisions in ERISA, 29 U.S.C. § 1056(d)(1), and the Internal Revenue Code, 26 U.S.C. § 401(a)(13), require profit sharing plans to contain a provision that "benefits provided under the plan may not be assigned or alienated." *General Motors Corp. v. Buha,* 623 F.2d 455 (6th Cir.1980). Section 7.7 of the United Metal Plan accordingly provides that "[n]o benefit under the Plan shall in any manner or to any extent be assignable or transferable by any Participant or beneficiary under the Plan or subject to attachment, garnishment or other legal process." In *Buha,* this court held that pension or profit sharing plan benefits were not subject to garnishment. 623 F.2d 463. Nevertheless, plaintiff urges that in the case of fraud, conversion, and embezzlement, as is the case here, there is an implied exception to the anti-alienation rule.

Plaintiff relies on *St. Paul Fire & Marine Ins. Co. v. Cox,* 752 F.2d 550 (11th Cir.1985). *Cox,* a former bank president who had been convicted of criminal fraud, sought to preclude garnishment of funds held in his name in a pension and profit sharing plan. The court created a fraud exception to ERISA, holding that Congress did not intend the anti-alienation provision to create a windfall for employees who engage in criminal acts at the expense of their employers. The Eleventh Circuit concluded that there was no reason to hold that ERISA required the abrogation of the equitable principle that a wrongdoer should not benefit from his misdeeds. *Id.* at 552. *See also Guidry v. National Sheet Metal Workers',* 641 F.Supp. 360 (D.Colo.1986) (constructive trust on pension benefits imposed in favor of union where union official embezzled union pension funds).

Defendant, on the other hand, relies on *Ellis National Bank of Jacksonville v. Irving Trust Co.,* 786 F.2d 466 (2d Cir. 1986). The Second Circuit held that the anti-alienation provision prohibited the employer from reclaiming, through the imposition of a constructive trust, funds contributed to the employee's pension plan even though the funds represented monies derived from fraudulent practices for which the employee was convicted and for which the employer became liable to defrauded customers. The court followed the reasoning of *Vink v. SHV North American Holding Corp.,* 549 F.Supp. 268 (S.D.N.Y. 1982), in determining that a theft or fraud exception to ERISA's anti-alienation provision would conflict with Congressional intent.

The *Vink* court, while recognizing that some courts had, in the past, created an exception to the anti-alienation provision in order for families to collect support obligations, distinguished those cases because they involved domestic relations, an area traditionally within the realm of state police powers. In comparison, the refusal to allow an employer to retain vested pension benefits of an employee who has been convicted of fraudulent activity in the course of his employment does not usurp any state function. 549 F.Supp. at 271. Second, while the family support exception rested on the fundamental purpose of ERISA to provide income to workers *and their families,* the court noted that "in no way would creating a fraud exception promote the well-being of the dependants of faithless employees whose pension benefits are taken away." *Id.* Third, the *Vink* court noted that unlike the family support exception, the fraud exception was not recommended by the Labor and Treasury Departments, "which are charged with enforcement and interpretation of ERISA and whose interpretation of the Act, though not controlling, is entitled to great weight." *Id.* at 272. Finally, the court recognized that there was abundant case law supporting the family support exception, but few cases accepting the fraud exception.[2] *Id.*

---

**2.** Subsequently, Congress codified the family support exception to ERISA's anti-alienation provision. *See* 29 U.S.C. § 1056(d)(3).

Accordingly, the Second Circuit expressly declined to follow *Cox*, finding that the fraud exception adopted there undermined a fundamental purpose of ERISA to ensure that "if a worker has been promised a defined pension benefit upon retirement—and if he has fulfilled whatever conditions are required to obtain a vested benefit ... he actually receives it." 786 F.2d at 471 (quoting *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 510, 101 S.Ct. 1895, 1899, 68 L.Ed.2d 402 (1981)). The court was also concerned with the scope of the proposed exception, which would likely be resolved only through a "boundless stream of suits and disputes." 786 F.2d at 471.

We find the reasoning and authority of the Second Circuit persuasive, although we would also add an additional, significant reason. While plaintiff's position is most appealing, the simple fact is that, as a policy matter, whether an exception should be created is a question for legislative rather than judicial judgment. *United States v. Rutherford*, 442 U.S. 544, 559, 99 S.Ct. 2470, 2479, 61 L.Ed.2d 68 (1979). Only when a literal construction of a statute yields results so manifestly unreasonable that they could not fairly be attributed to congressional design will an exception to statutory language be judicially implied. *Id.* at 555, 99 S.Ct. at 2477. We believe Congress could have reasonably concluded that stability and certainty of pension and profit sharing plans, as well as the avoidance of delay or non-receipt of promised benefits, are important and legitimate goals of ERISA.

We recognize that plaintiff has presented an almost ideal case for creation of an implied exception to pension anti-alienation laws. Coelho's criminal conduct reduced plaintiff's profits and thereby adversely affected her coworkers. Plaintiff now seeks access to Coelho's funds to return them to the plan for use by its loyal employees injured by Coelho's wrongdoing. Apparently, Coelho has no dependents who would be left wanting by the forfeiture of her

funds and, indeed, it is unclear whether Coelho will ever appear to collect the money.

Nevertheless, while the instant case is most compelling, we can conceive of countless factual situations that would present equally persuasive opportunities to create exceptions to the anti-alienation laws. We need not limit such exceptions to cases of employee fraud; other situations could be equally convincing. It is highly unlikely, however, that the majority of those cases would present the uncomplicated facts we see here. As a result, presented with competing applicants for pension funds, courts would find themselves engaging in a sensitive balancing of factual equities and conflicting policies. While courts are undoubtedly up to the task of such balancing, we feel that the call to do so should come from Congress, and not this court.

Accordingly, we hold that there is no fraud exception to ERISA's anti-alienation provision, 29 U.S.C. § 1056(d) or to the Internal Revenue Code, 26 U.S.C. § 401(a)(13), due to an employee's fraudulent or criminal conduct directed against an employer. The judgment of the district court is AFFIRMED.

WELLFORD, Circuit Judge, dissenting.

I respectfully dissent and would reverse the decision of the district court. I find the decision in *St. Paul Fire & Marine Ins. Co. v. Cox*, 752 F.2d 550 (11th Cir.1985) to be persuasive and even compelling under the circumstances of this case, and it would mandate reversal.

ERISA was established to protect "the continued well-being and security of millions of employees and their dependents" by providing "minimum standards ... assuring the equitable character of [pension fund] plans and their financial soundness." 29 U.S.C.A. § 1001(a). These standards are intended to protect the employee against mismanagement or

the provision of misinformation by the employer. The legislation provides no indication whatsoever that it is intended to protect the employee against the consequences of his own misdeeds.

*Id.* at 552.

As stated in *Cox,* "a wrongdoer should not profit from his [or her] misdeeds," and protection or insulation of the interest of a defalcating and defrauding employee who has wrongfully taken over $440,000 of her employer's funds and fled from the country surely does "not protect the financial interests of other employees or promote security in the workplace," the principal aims of ERISA. *Id.* at 552. It should be remembered in this case that the plan involved is a profit sharing plan for the benefit of all eligible employees. We may readily infer that the wrongful taking of substantial funds had an adverse effect on the profits of United Metal Products and, consequently on other employees under the plan. United Metal now seeks court assistance in using the amount in Coelho's account to reimburse the profit sharing plan for the benefit of remaining employees, *not* for the company's benefit.

In enacting ERISA Congress was concerned about "bad boy" forfeiture provisions in pension plans whereby the employer might challenge or preclude payments of vested pension or retirement benefits in cases of alleged disloyalty or deficient performance in enacting ERISA. That concern, however, is no basis to attribute to Congress an intent to protect a fraudulent employee, especially one found after court proceedings to have engaged in conduct criminal in nature and inimical, not only to the employer, but to fellow employees whom ERISA is designed to protect. The court in *Ellis National Bank v. Irving Trust Co.,* 786 F.2d 466 (2d Cir.1986), acknowledged the "equitable appeal" of *Cox, supra,* but declined to follow its sound reasoning. I disagree with the conclusion that to permit a garnishment *for the benefit of fellow employees* in a case of this kind would "threaten the fundamental objective envisioned by Congress." 786 F.2d at 471. Nor would a narrow exception to the general anti-alienation provisions of ERISA, limited to the outrageous and undisputed wrongful criminal type of misconduct here involved, produce the conjured "boundless stream of suits and disputes" referred to in *Vink v. SHV North America Holding Corp.,* 549 F.Supp. 268, 273 (S.D. N.Y.1982).

Reasons for the family support exception to ERISA anti-alienation language, already recognized and acknowledged, are no more compelling than reasons for a narrow exception in a case of this type in which an employee who has in effect, at least indirectly, defrauded fellow employees participating in a profit sharing plan. *See Guidry v. National Sheet Metal Workers,* 641 F.Supp. 360 (D.Colo.1986) (finding "narrow exception" to allow ,constructive trust on pension plan funds when union officer had embezzled funds from union pension plan); *National Bank of N. America v. Int'l Brotherhood of Electrical Workers,* 69 A.D.2d 679, 419 N.Y.S.2d 127 (Sup.Ct.) *appeal dismissed,* 48 N.Y.2d 752, 422 N.Y.S. 666, 397 N.E.2d 1333 (1979) (ERISA's antialienation provision does not pre-empt or preclude judgment creditor's state statutory rights).

I would reverse and remand for the district court to consider whether the plaintiff in this case has met the reasoning and logic of the *Cox* rule, which I would adopt in this circuit.