856 F.2d 1457
 57 USLW 2140, 9 Employee Benefits Ca 2553
 Curtis GUIDRY, Plaintiff-Appellant,
v.
SHEET METAL WORKERS NATIONAL PENSION FUND, and Edward J.
Carlough, Robert T. Stringer, C.T. Roff, and Cavet Snyder,
Trustees; Sheet Metal Workers' Local Unions and Councils
Pension Plan and Edward J. Carlough, Cecil D. Clay, George
J. Cuddihy, Urie E. Williams, Jr., and Richard J. Scott,
Trustees, Defendants-Appellees,
and
Sheet Metal Workers International Association, Local No. 9,
Intervenor-Appellee,
and
Sheet Metal Workers Local No. 9 Pension Fund, Rule 19 Party-Appellee.
 No. 86-2323.
 United States Court of Appeals,
Tenth Circuit.
 Aug. 24, 1988.
 
 Eldon Silverman, of Silverman and Gelman, P.C., Denver, Colo. (Michael P. Serruto with him on the briefs of Elrod, Katz, Preeo & Look, P.C., Denver, Colo.), for plaintiff-appellant.
 Joseph M. Goldhammer of Brauer & Buescher, P.C. (Raymond J. Sweeney, Washington, D.C., with him on the brief), Denver, Colo., for defendants-appellees.
 Before HOLLOWAY, Chief Judge, MOORE, Circuit Judge and RUSSELL,* District Judge.
 JOHN P. MOORE, Circuit Judge.
 
 
 1
 This is an appeal from the district court's order placing a constructive trust upon plaintiff's pension benefits, 641 F.Supp. 360 (1986). The trust was imposed to allow recovery of a judgment obtained by the Sheet Metal Workers' International Association, Local No. 9 (the Union), for money embezzled by Mr. Guidry from the pension fund. Plaintiff argues that the anti-alienation provision of ERISA (the Act) should have precluded the district court from placing his pension benefits in a constructive trust. Plaintiff also claims that imposition of a constructive trust must be limited to funds linked to his embezzlement and traceable into the pension funds, or, alternatively, that seventy-five percent of pension benefits must be exempted from the constructive trust because of garnishment restrictions in the Consumer Credit Protection Act. We are not persuaded by these arguments and affirm the district court's decision.
 
 
 2
 From 1964 until 1981, Mr. Guidry served as business manager and chief executive officer of the Union. During approximately the last five years of this period, Mr. Guidry was also a trustee of the Union's pension fund. When he resigned as business manager, the Union commissioned an audit which concluded that nearly $1,000,000 had been stolen from it. In March 1982, Mr. Guidry pled guilty to embezzling $377,000 from the Union by depositing into his own account checks made payable to the Union from several trust funds. The Union and Mr. Guidry stipulated to the entry of a $275,000 judgment in January 1986 on the Union's first five claims of relief. That judgment has been certified as final.
 
 
 3
 Mr. Guidry brought this suit after being denied early retirement pension benefits by the Sheet Metal Workers' National Pension Fund and the Sheet Metal Workers' Local Unions and Councils Pension Plan.[1] The defendant pension funds claimed they owed no benefits because plaintiff's misconduct forfeited his right to payment. Alternatively, the funds and the Union argued that plaintiff's pension benefits should be placed in a constructive trust until satisfaction of the stipulated judgment. The district court granted Mr. Guidry his pension funds but placed them in a constructive trust to be paid to the Union. In its order denying plaintiff's motion for a new trial, the court further held that the constructive trust was not limited to pension benefits actually traced to the embezzlement.
 
 I.
 
 4
 Plaintiff first contends that the district court's decision to impose a constructive trust on his interest in the pension plan is contrary to the anti-alienation provision of ERISA. This provision mandates that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. Sec. 1056(d)(1). The only express exceptions to this provision allow assignment for a "qualified domestic relations order" and "a voluntary and revocable assignment of not to exceed 10 percent of any benefit payment...." 29 U.S.C. Sec. 1056(d)(2),(3). Plaintiff further points out two circuit courts have held that the meaning of Sec. 1056(d)(1) is clear and have therefore refused to find an exception for criminal conduct. See Ellis Nat'l Bank of Jacksonville v. Irving Trust, 786 F.2d 466 (2d Cir.1986); United Metal Prods. v. National Bank of Detroit, 811 F.2d 297 (6th Cir.1987), cert. denied, --- U.S.----, 108 S.Ct. 1494, 99 L.Ed.2d 879 (1988).
 
 
 5
 However, the anti-alienation provision has not been regarded as immutable by the courts. In Stone v. Stone, 632 F.2d 740 (9th Cir.1980), cert. denied, 453 U.S. 922, 101 S.Ct. 3158, 69 L.Ed.2d 1004 (1981), for example, the court required pension plan payments to be made directly to an ex-spouse to pay her community property share. A number of courts have also garnished pension plan benefits to satisfy alimony and child support obligations.[2] E.g., American Tel. & Tel. v. Merry, 592 F.2d 118 (2d Cir.1979); Senco of Florida v. Clark, 473 F.Supp. 902 (M.D.Fla.1979). In all of these decisions, courts have used their inherent equitable authority to find implied exceptions to ERISA's anti-alienation provision when the beneficiary sought to avoid a legal duty.
 
 
 6
 Building upon these earlier decisions, the D.C. Circuit and the Eleventh Circuit have decided that a court may garnish a beneficial interest in a plan to satisfy a judgment based on a breach of ERISA. In Crawford v. La Boucherie Bernard, Ltd., 815 F.2d 117 (D.C.Cir.), cert. denied, --- U.S. ----, 108 S.Ct. 328, 98 L.Ed.2d 355 (1987), the court offset the interest of a participant and trustee in a profit sharing plan against a judgment based on his embezzlement of trust funds. The court emphasized the broad goal of ERISA to "protect ... the interests of participants in employee benefit plans ... by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. Sec. 1001(b). The court also noted ERISA provides that a person who breaches a fiduciary duty "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, ... and shall be subject to such other equitable or remedial relief as the court may deem appropriate...." 29 U.S.C. Sec. 1109(a). Pursuant to these statutes, the court held that it had broad authority to fashion remedies, including offsetting defendant's plan benefits against a judgment debt, to redress breaches by trustees and to protect the interests of participants and beneficiaries. 815 F.2d at 119.
 
 
 7
 The court in St. Paul Fire and Marine Ins. v. Cox, 752 F.2d 550 (11th Cir.1985), also held that a trustee-participant's interest in a pension fund could be garnished to satisfy a judgment debt resulting from embezzlement of funds. The court found that ERISA's purpose of establishing standards to assure the equitable character of pension funds included protecting employees against mismanagement of these funds. "The insulation of an employee from liability for the consequences of his criminal misconduct does not protect the financial interests of other employees or promote security in the workplace," the court concluded. 752 F.2d at 552. "On the contrary, in such cases garnishment of the employee's fund interest best serves the financial stability of the employer and, indirectly, the employer's pension plan." Id. See also Calhoun v. FDIC, 653 F.Supp. 1288, 1293 (N.D.Tex.1987) (following St. Paul Fire in holding the FDIC's withholding of pension plan benefits to an insolvent bank did not violate ERISA's anti-alienation provision).
 
 
 8
 We agree with the D.C. and Eleventh Circuits and decline to follow the holdings of Ellis Nat'l Bank and United Metal Prods.[3] A major purpose of ERISA is to safeguard "the continued well-being and security of millions of employees and their dependents ... [by establishing] minimum standards ... assuring the equitable character of [pension fund] plans and their financial soundness." 29 U.S.C. Sec. 1001(a). We find no indication in the Act that the unscrupulous fiduciary is to be protected from the natural legal consequences of his or her misdeeds. Indeed, as the D.C. Circuit noted, "A contrary interpretation would permit trustee wrongdoers to benefit from their misdeeds at the expense of those whom ERISA was designed to protect." Crawford, 815 F.2d at 121. When Mr. Guidry left office after embezzling at least $370,000, the Union had only $150,000 in cash assets remaining, and the financial security of workers who relied upon the Union's pension plan was severely undermined. Given the express purpose of ERISA to protect the financial security of employees, we find it extremely unlikely that Congress intended to ignore equitable principles by protecting individuals such as the plaintiff from the consequences of their misconduct.[4]
 
 
 9
 Furthermore, the district court's use of a constructive trust to redress breaches of ERISA was proper. The Supreme Court has consistently emphasized the inherent equitable jurisdiction of federal district courts.[5] See Cummings by Techmeier v. Briggs & Stratton Retirement Plan, 797 F.2d 383, 390 (7th Cir.), cert. denied, 479 U.S. 1008, 107 S.Ct. 648, 93 L.Ed.2d 703 (1986). For example, in Mitchell v. Robert De Mario Jewelry, 361 U.S. 288, 291, 80 S.Ct. 332, 335, 4 L.Ed.2d 323 (1960), the Court stated that "[u]nless otherwise provided by statute, all the inherent equitable powers of the District Court are available for the proper and complete exercise of that jurisdiction." Any statutory restriction of a court's jurisdiction in equity must be clearly stated or be accomplished by "a necessary and inescapable inference." Porter v. Warner Holding Co., 328 U.S. 395, 398, 66 S.Ct. 1086, 1089, 90 L.Ed. 1332. "The great principles of equity, serving complete justice, should not be yielded to light inference or doubtful construction." Id. (quoting Brown v. Swann, 34 U.S. (10 Pet.), 1, 9 L.Ed. 29 (1836)).
 
 
 10
 Far from limiting the inherent power of a district court, Congress emphasized on several occasions the broad scope of remedies available under ERISA. In addition to the previously mentioned statutory language giving the courts authority to fashion remedies, e.g., 29 U.S.C. Sec. 1109(a), the legislative history of the Act indicates Congressional intent to provide a broad variety of remedies for redressing the interests of participants and beneficiaries when they have been adversely affected by breaches of fiduciary duty. See Eaves v. Penn, 587 F.2d 453, 462 (10th Cir.1978). For example, the Report of the Senate Committee on Labor and Public Welfare states: "The enforcement provisions have been designed specifically to provide both the Secretary and participants and beneficiaries with broad remedies for redressing or preventing violations.... The intent of the committee is to provide the full range of legal and equitable remedies available in both state and federal courts." S.Rep. No. 93-127, 93d Cong., 2nd Sess., reprinted in 1974 U.S.Code Cong. & Admin. News 4639, 4838, 4871. In developing these remedies, Congress intended the federal courts to draw upon principles of traditional trust law:
 
 
 11
 Neither existing State nor Federal law has been effective in preventing or correcting many ... abuses [by fiduciaries]. Accordingly, the legislation imposes strict fiduciary obligations on those who have discretion or responsibility respecting the management, handling, or disposition of pension or welfare plan assets. The objectives of these provisions are to make applicable the law of trusts; ... to establish uniform fiduciary standards to prevent transactions which dissipate or endanger plan assets; and to provide effective remedies for breaches of trust.
 
 
 12
 Statement of the Honorable Harrison A. Williams, Jr., 120 Cong.Rec. S-15737, Aug. 22, 1974, reprinted in 1974 U.S.Code Cong. & Admin. News 5177, 5186.
 
 
 13
 Trust law contemplates the use of flexible remedies which will be most advantageous to the trust's participants and will be most conducive to effectuating the purposes of the trust. Eaves v. Penn, 587 F.2d at 462 (quoting Restatement (Second) of Trusts Sec. 214 (1959)). It is also an axiom of trust law that a trustee should not be permitted to benefit from his own breaches, Restatement (Second) of Trusts Sec. 205 comment i, and the constructive trust has long been recognized as a method for preventing the unjust enrichment of a trustee who has fraudulently divested a trust. E.g., Askins v. Easterling, 141 Colo. 83, 347 P.2d 126 (1959); Unicure, Inc. v. Thurman, 42 Colo.App. 241, 599 P.2d 925 (1979). We believe the district court's imposition of a constructive trust on plaintiff's pension benefits both accorded with these principles of trust law and was well within its discretionary power as defined by the common law and ERISA. We therefore affirm its employment of the constructive trust remedy.
 
 II.
 
 14
 Plaintiff next argues that even if the use of the constructive trust is upheld, it can only be used to recover the specific property wrongfully taken. Therefore, plaintiff claims, the Union may employ this remedy to only recover embezzled money which was deposited in the pension funds. The Union cannot make this showing because plaintiff dissipated the embezzled funds through gambling.
 
 
 15
 This argument is not convincing. Plaintiff correctly states the standard rule that beneficiaries only have a personal claim against a trustee unless they are able to trace the trust property. However, if the trustee is also a beneficiary, it is a tenet of trust law that other beneficiaries can compel repayment out of the trustee's beneficial interest of any losses to the trust resulting from a breach of duty. This rule applies even if the beneficiaries cannot trace the stolen trust property. III A.W. Scott, Scott on Trusts Sec. 202 (3d ed. 1967). As Professor Scott explains:
 
 
 16
 If the trustee is also one of the beneficiaries ... the other beneficiaries can compel him to make good the breach of trust out of his beneficial interest in the trust property. The defaulting trustee-beneficiary is not entitled to receive his share of the trust property until he has made good the loss which resulted from his breach of trust.... Thus if T is trustee under a trust to divide the income among two other beneficiaries and himself for life, and he commits a breach of trust resulting in a diminution of the income, the other beneficiaries are entitled to insist that the loss of income shall be made good out of his interest.... The truth is that the impounding of the share of the trustee-beneficiary is a method of compelling him to make specific restitution for the breach of trust in a situation where it is possible thus to compel specific restitution.
 
 
 17
 Id. Sec. 257. See also G.G. Bogert & G.T. Bogert, The Law of Trusts and Trustees Sec. 191 (2d ed. 1979) ("[i]f a beneficiary is also a trustee of his own trust ... and ... if he steals trust funds, or causes damage to the trust estate in other ways, his share under the trust, whether in his own hands or those of a transferee, will be taken by the court in order to make good the loss").
 
 
 18
 The few relevant cases uniformly follow the rule articulated in these treatises. For example, in In re Van Nostrand's Will, 177 Misc. 1, 29 N.Y.S.2d 857 (Sur.Ct.1941), the court placed an equitable lien upon the beneficial interest of a trustee who had embezzled trust property to compensate wronged beneficiaries of the trust. The trustee-beneficiary was treated as having received his interest by anticipation: he could not enjoy his beneficial interest because he had already embezzled his share of the trust. 29 N.Y.S.2d at 865. See also In re Watson, 449 N.E.2d 1156 (Ind.Ct.App.1983) (successor trustee properly applied former trustee's undistributed income to satisfy prior judgment for embezzling trust corpus); In re Brereton's Estate, 388 Pa. 206, 130 A.2d 453 (1957) (beneficiaries may impound share of trustee-beneficiary who advanced himself sums from the trust).
 
 
 19
 The fact that the anti-alienation provision of ERISA might be interpreted as a spendthrift clause does not preclude the use of a constructive trust to garnish plaintiff's pension benefits. While the interest of a trustee-beneficiary of a spendthrift trust cannot be reached by his creditors, other beneficiaries can still impound the interest to satisfy losses resulting from a breach of trust unless the settlor of the trust specifies otherwise. See, e.g., Restatement (Second) of Trusts Sec. 257 comment f; III Scott on Trusts Sec. 257.1. In In re Burr, 143 Misc. 877, 257 N.Y.S. 654 (Sur.Ct.1932), aff'd, 239 A.D. 774, 263 N.Y.S. 945 (N.Y.1933), for example, the court held that a trustee properly withheld trust payments owed to a prior trustee who had misappropriated trust funds. In reaching this conclusion, the court disregarded a state statute precluding the assignment of a beneficiary's interest because "[i]t was not intended to protect a dishonest fiduciary in the retention of income otherwise payable to him from the trust." 257 N.Y.S. at 657.[6]
 
 
 20
 Congress did not intend for ERISA's anti-alienation provision to protect dishonest fiduciaries. Simply, there is no indication in ERISA's statutory language or legislative history that an unscrupulous trustee should be shielded from the consequences of his misdeeds. On the contrary, there are repeated references to the goal of promoting stability in the work place by protecting the beneficiaries from potential misdeeds, negligence, and mismanagement by fiduciaries of benefit plans. E.g., 29 U.S.C. Sec. 1001(b). Given this professed purpose of ERISA, we do not think Congress intended the anti-alienation provision to preclude the impoundment of the beneficial interest of a trustee who has damaged a trust through embezzlement. We therefore hold that the district court properly imposed a constructive trust upon plaintiff's pension benefits, regardless of whether the embezzled funds could be traced back into the trust.
 
 III.
 
 21
 Plaintiff's final argument is that he may exempt seventy-five percent of his pension benefits from garnishment under the provisions of the Consumer Credit Protection Act. According to this legislation, only a maximum of twenty-five percent of an individual's weekly earnings may be garnished. 15 U.S.C. Sec. 1673(a). "Earnings" are defined as "compensation paid or payable for personal services, whether denominated as wages [or] salary ... and includes periodic payments pursuant to a pension or retirement program." 15 U.S.C. Sec. 1672(a); see also Ward v. Ward, 164 N.J.Super. 354, 396 A.2d 365 (1978) (pension benefits are "earnings" under the Consumer Credit Protection Act). Furthermore, "garnishment" is defined as "any legal or equitable procedure through which the earnings of an individual are required to be withheld for payment of any debt," 15 U.S.C. Sec. 1672(c), and could encompass the constructive trust levied in the instant case.
 
 
 22
 However, plaintiff appears to have not complied with the procedural requirements of Colorado's garnishment laws.[7] According to the Colorado Rules of Civil Procedure, after the garnishee delivers a copy of the judgment creditor's writ of continuing garnishment with a statement of exempt and nonexempt earnings, the judgment debtor has five days to resolve any dispute regarding these calculations. C.R.C.P. 103, Sec. 6(a)(1) (1987 Supp.). If the judgment debtor's objection is not resolved within this period, he has five more days to file a written objection with the court. C.R.C.P. 103, Sec. 6(a)(2). Alternatively, the judgment debtor who fails to file a written objection may within six months of receiving the writ of garnishment object to the court if new evidence indicates that error occurred. C.R.C.P. 103, Sec. 6(d)(1), (2). From the record provided by plaintiff, it is apparent he did not make any objection within the specified time period.
 
 
 23
 We are mindful that the garnishment proceedings in the instant case were unusual, since the three defendant pension funds argued throughout the proceedings that plaintiff had forfeited his pension benefits by his fraudulent conduct and therefore the Union could not garnish any money in the funds. Nevertheless, Colorado places the burden of objecting to a writ of garnishment firmly upon the judgment debtor; the failure of the judgment debtor to file a timely objection results in the automatic disbursement of the garnished money to the judgment creditor. C.R.C.P. 103, Sec. 1(l )(1). Plaintiff in the instant case received a copy of the writ of garnishment which both gave the calculation of the nonexempt money owed to the Union and enumerated his right to object to the garnishment. Plaintiff should have then responded to the Union's writ seeking all his pension benefits by bringing the exemption restriction of the Consumer Credit Protection Act to the court's attention. Having failed to do so, we believe plaintiff may not now raise this issue several years after the writs of garnishment were issued. The issue of the exemption was not properly before the district court; therefore, we refuse to consider it. Accordingly, we affirm the district court's judgment imposing a constructive trust upon all of plaintiff's pension benefits until the judgment debt is satisfied.
 
 
 24
 AFFIRMED.
 
 
 
 *
 Honorable David L. Russell, United States District Judge for the District of Oklahoma, sitting by designation
 
 
 [1]
 The Union successfully moved to intervene in the suit and joined the Local No. 9 Pension Fund
 
 
 [2]
 This family support exception was later codified by Congress in its amended ERISA statute, 29 U.S.C. Sec. 1056(d)(3)
 
 
 [3]
 The courts in these two decisions rely upon identical arguments distinguishing between the accepted family support exception and the fraud exception. See United Metal Prods., 811 F.2d at 299-300; Ellis Nat'l Bank, 786 F.2d at 470-471. We do not think these arguments are persuasive. First, both courts argue that only the family support exception rests on the express fundamental purpose of ERISA to provide income to workers and their families. The courts overlook, however, the Act's expressed purpose of protecting employees from mismanagement of their pension funds. This purpose would not be advanced by letting fiduciaries who have acted fraudulently enjoy pensions from funds damaged by their misconduct. Second, both courts point out that the Labor and Treasury Departments have urged the adoption of the family support exception but have remained silent on the fraud exception. We agree that recommendations by these agencies should be given some weight. But their interpretation is not controlling. E.g., Skidmore v. Swift & Co., 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944). The fact that neither agency has recommended the fraud exception does not persuade us to ignore the strong arguments supporting such an exception. Third, the two courts recognize "abundant case law" supporting the family support exception and very few cases accepting the fraud exception. While the family support exception was broadly accepted even before it became codified, three circuit courts have implied a fraud exception to the anti-alienation provision of ERISA and only two have refused to allow the exception. Fourth, both courts express worry regarding the scope of the fraud exception, which they opined would likely be resolved only after extensive litigation. However, we believe a narrow exception applicable only to a trustee-beneficiary who has directly or indirectly damaged the fund through his fraudulent actions could be relatively easily defined and applied. Finally, both courts emphasize that the family support exception involves family relations, which are traditionally within the realm of state police power. But we believe the public interest in seeing that theft victims recover their stolen property is no less fundamental and firmly embedded within the realm of state police power
 
 
 [4]
 We are aware of the recent decision of Mackey v. Lanier Collections Agency & Serv., --- U.S. ----, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), in which the Supreme Court stated in dicta that ERISA's anti-alienation provision precludes garnishment of pension benefits. The Court's discussion, however, focused on its holding that Congress did not intend to preempt state-law garnishment procedures of an ERISA welfare benefit plan (emphasis added). It neither discussed in depth nor cited support for its statement regarding pension benefit plans. We therefore do not believe this decision is dispositive of the issues in the instant case
 
 
 [5]
 Here, we contrast equitable jurisdiction with jurisdiction in law which we previously held is restricted to the specifics created by statute. Wyeth Laboratories v. United States Dist. Court for Dist. of Kan., 851 F.2d 321 (10th Cir.1988)
 
 
 [6]
 While the court in another leading case, Blakemore v. Jones, 303 Mass. 557, 22 N.E.2d 112 (1939), apparently reached an opposite conclusion, it probably did so by interpreting the testator's intent as prohibiting the impoundment of the trustee-beneficiary's interest. In Blakemore, the testator created a trust for his widow. After the named trustees disclaimed the responsibility, the court appointed the widow and her attorney as co-trustees. Through lack of good judgment by her co-trustee, the trust lost some of its principal, and a surety sought to reach her interest in the trust. The court held that the widow's interest could not be reached because the testator had created a spendthrift trust
 Although the court did not discuss the testator's intent, it is noteworthy that he did not appoint his wife trustee.
 Furthermore, the widow did not act dishonestly or otherwise try to defraud the fund. As one commentator stated:
 The familiar rationale of spendthrift trusts is that the settlor's intent should be given effect if it does not violate public policy.... Such a violation does not seem to have occurred in the [Blakemore ] case, since a trustee may by special provision be relieved from any liability for losses negligently incurred.... Although the [Blakemore ] court did not stress [the widow's] lack of moral fault, it seems clear that the present case should not control where the breach of trust is dishonest. A spendthrift clause hardly manifests an intention to protect the trustee-beneficiary where he is dishonest, and even if such an intention could be found policy should forbid its fulfillment.
 Recent Cases, 53 Harv.L.Rev. 129, 148 (1939) (citations omitted).
 
 
 [7]
 State garnishment laws are applicable to proceedings in federal courts. Fed.R.Civ.P. 64. Also, we note that Colorado's garnishment laws are not preempted by ERISA. Although the preemption clause in ERISA broadly provides that the Act "shall supersede any and all state laws insofar as they ... relate ... to any employee benefit plan," 29 U.S.C. Sec. 1144(a), a great number of courts considering pension benefits have refused to hold that state garnishment laws are preempted by this provision. E.g., American Tel. & Tel. v. Merry, 592 F.2d at 118; Operating Engineers' Local No. 428 Pension Trust Fund v. Zamborsky, 650 F.2d 196, 199 (9th Cir.1981). Preemption of state law is not favored unless Congress has unmistakenly so ordained or the nature of the regulated subject matter permits no other conclusion. Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 522, 101 S.Ct. 1895, 1905, 68 L.Ed.2d 402 (1981). For the reasons given in this opinion, we do not believe Congress intended the preemption provision to preclude beneficiaries from garnishing a trustee's beneficial interest to rectify damage done to the trust as a result of his misconduct. Furthermore, as the Supreme Court recently pointed out, ERISA does not provide a mechanism for collecting judgments won against an ERISA plan. Consequently, state law methods for collecting money judgments must generally remain undisturbed by ERISA or there would be no way to enforce a judgment. Mackey v. Lanier Collecting Agency & Serv., 108 S.Ct. at 2187